## TEBE TIDWELL v. THE STATE.

### No. 1895. Decided October 26, 1898.

### Motion for Rehearing Decided December 14, 1898.

#### 1. Confessions—Interrogatories.

Because a confession may be elicited by questions is not alone sufficient to render it inadmissible. The question, in order to render it inadmissible, must be of a character and propounded under circumstances and in a manner either to coerce or persuade. The only criterion is that the confession must appear to be free and voluntary and not made under coercion or persuasion.

#### 2. Same—Corpus Delicti.

A confession can be considered, along with the other testimony, to establish the corpus delicti. See opinion for circumstances in evidence which in connection with defendant's confession, are held sufficient to establish the corpus delicti.

#### 3. Theft of a Mule—Hired Hand—Charge.

On a trial for theft of a mule, where the defense was that defendant was a hired hand, in ignorance of the theft, and the court, in connection with the charge upon the law of principals, added, and "any person who agrees to the commission of an offense, and is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act;" Held, not erroneous where the proof showed that if defendant was present he rendered actual and positive aid, and that if he was not merely a hired hand he was unquestionably guilty in the theft of the mule.

#### 4. Same—Confession—Additional Instructions Asked by Jury.

Where, in answer to a request from the jury for additional instructions as to what constitutes a voluntary confession, the court instructed them, that it was "a confession made freely and without compulsion or pursuasion," Held, the response was a direct answer to the request as made, and was correct and sufficient.

#### 5. Corpus Delicti—Confession—Charge.

Where the State does not rely alone upon defendant's confession to establish the corpus delicti, and there was other testimony sufficient to establish it, the court did not err in failing to instruct the jury that they could not convict on defendant's confession unless corroborated by other evidence tending to establish the corpus delicti.

#### 6. Same.

If the corpus delicti is based alone upon a defendant's confession, the court should instruct an acquittal.

#### ON MOTION FOR REHEARING

#### 7. Contemporaneous Thefts—Charge.

On a trial for theft of a mule, where defendant's confession, introduced in evidence, admitted the fraudulent taking of other animals, the court correctly charged as to such contemporaneous thefts, and the charge would have been subject to complaint had it failed to do so and had it failed to limit the testimony as to such contemporaneous thefts to its proper purpose.

APPEAL from the District Court of Tarrant. Tried below before Hon. IRBY DUNKLIN.

Appeal from a conviction for theft of a mule; penalty, two years imprisonment in the penitentiary.

The indictment contained two counts, the first charging the theft of a mule, the property of A. M. Dillin, the other the theft of a mule, the property of Frank Grogan; both thefts alleged to have been committed on December 7, 1897.

The evidence showed that Dillin owned the mule, but had left it to be

kept by Grogan in his pasture (the Harrison pasture) until Dillin needed it. It was missed from Grogan's pasture on the 6th day of December, and was recovered ten days thereafter from one Frank Turnbow, in Gainesville, Texas.

S. P. Clark testified: "I am the sheriff of Tarrant County, Texas. I know the defendant. About the 15th day of December, 1897, I went to Gainesville after the defendant and Elzie Isham. I found them in jail there. The sheriff had them brought out to his office at my request. I talked to the defendant in the sheriff's office in Gainesville. I first told him that I would like for him to tell me about the mules that had been taken in Tarrant County. I then told him that he was under arrest for the theft of mules, and that anything he said to me would be used as evidence against him on the trial of his case. He then said to me, that he worked with Elzie; he said that he saw his brother Frank and cousin Luke Shannon, who were present when first mentioned by Elzie. The other boys who were present advised him not to go. He also said, that he and Elzie went down and caught this (the Dillin) mule, then a mare, then Sam Schultz's mule. He also said that Elzie told him, at the time they were catching the mules, that he did not know who owned the two mules; he also said that they left the horses at Tip Isham's, changed saddles, crossed the river, traveled all night Wednesday night to Argyle, about daylight, and got breakfast at Denton Thursday. That Elzie traded one of the mules for a horse near Denton, and that they got to Gainesville that night. He also said that Elzie sold all the mules and was to give him half of the money." Crossed by defendant: "This statement was made to me in the sheriff's office, in Gainesville; the sheriff was present. This was about December 15, 1897. This conversation occurred about a week after the loss of the mules. The defendant did not tell me, in this conversation, that Elzie Isham was to pay him $5. He told me that he was to have 50 per cent of everything every time Elzie made a trade. He also told me that he was riding the sorrel mule, and got off, and Elzie swapped the mule. He also said that he kept away from where Elzie was, after they got to Gainesville; that Elzie told him to keep away from where he was. He said they started Wednesday night. He said they were together on Tuesday. He said that they got all the stock Wednesday night. Sometimes I would ask him questions, and sometimes not. Up till after they were in possession of the stock, nearly all he stated was in answer to questions. After that his statements were made without my asking him any questions. I asked him what time they took the stock, and he said Wednesday, and they started to Gainesville the same night. He told me that they got the mules on the Harrison place. I did not make the defendant any promises or hear of anyone doing so. I told him if he wanted to tell me anything I would be glad to hear it, but that he did not have to tell me anything unless he wanted to, and I then told him that whatever he told me would be used as evidence against him on the trial of his case. He knew that I was sheriff when he was talking to me. All of his statements were

· made to me after I had warned him. I sent over to the jail for him; my purpose of sending for him was to try and find out where the stock were; also to find out where other stolen stock were, and to hear what he had to say about the Dillin mule."

H. H. Goodman, for defendant, testified that he was deputy sheriff of Cooke County, and that about the 10th of December he arrested Elzie Isham and defendant, in Gainesville, on suspicion that Isham had been in possession of stolen mules and horses. That after warning defendant at the jail, defendant said that Isham had hired him to help him to bring the animals from Tarrant County, and was to give him $5 and pay all his expenses on the trip. That Isham told him the animals were all right, and that they were his. That he never saw defendant in possession of the horses at any time.

Frank Tidwell and Albert Burton testified that they were present when Elzie Isham hired defendant, and that he agreed to pay him $5 and all expenses of the trip.

*O. S. Lattimore* and *W. R. Parker*, for appellant, filed an able brief and an elaborate argument on the motion for rehearing

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of a mule, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant insists that the court committed an error in admitting the testimony of D. P. Clark as to the defendant's alleged confession, on the ground that the same was not voluntary. We understand his contention to be, not that appellant was not properly warned, but that, after he was so warned, his confession or statement was elicited by interrogatories propounded to him by Clark. Because a confession may be elicited by questions is not alone sufficient to render it inadmissible. The question must be of a character and propounded under circumstances in a manner calculated either to coerce or persuade. There is no evidence here of such facts. The rule with reference to dying declarations does not apply to a matter of this sort. There the statute requires that the questions be not calculated to induce the desired answer. Here the only criterion is that the confession must appear to be free and voluntary, and not made under coercion or persuasion. There is no question here that the confessions were not voluntarily made, and the court did not err in failing to instruct the jury on this subject as requested by appellant.

Appellant further urges that the corpus delicti has not been proven; and in that connection he insists that this must be proven independent of appellant's confessions. In answer to the last proposition, we would state the rule insisted on by appellant is not a sound one, but the confession can be considered along with the other testimony in order to estab-

lish the corpus delicti.   See Anderson v. State, 34 Texas Crim. Rep.,
546; Kugadt v. State, 38 Texas Crim. Rep., 681; Rice, Crim. Ev., p. 466,
sec. 294.   We have examined the testimony carefully with reference to
the corpus delicti.   The State's case shows that about the 6th of Decem-
ber the mule in question was in the pasture of one Harrison, left there
with his mate by the prosecutor.   This pasture was some four or five
miles from Fort Worth.   The mule was missed by the owner on the 6th
of December, its mate being still in the pasture.   Search was made for
it for one or two days without finding it.   About the 10th of December
the mule was shown to be in Gainesville, in the possession of a party
there.   It is said that the pasture fence was down in several places, and
that the mule might have strayed off.   There is no testimony, however,
tending to show that its range was in the direction of Gainesville, and
none tending to suggest any reason why it should have left its mate and
gone a distance of about forty miles.   At the least, this testimony tends
to show that said mule was stolen.   Now, if, in connection with this, we
take the confession of appellant, the evidence becomes very strong to
that effect.   Indeed, his confession explains in a most reasonable and
plausible manner the absence of the mule from the Harrison pasture
after the 6th of December, and its presence in Gainesville on the 9th or
10th of December; especially when we take into view the fact that ap-
pellant was seen in proximity to the Harrison pasture on the 7th of De-
cember, and that he was found in Gainesville on the 10th.   We would
moreover observe, in connection with this matter, that the corpus delicti
does not appear to have been contested by appellant on the trial.   The
very defense set up by him was that, while the mule was stolen, he
was not guilty; that he merely assisted in driving the same from the
pasture to Gainesville as a hired hand, without knowledge that the said
mule was being stolen.

Appellant also insists that the court should have given his special in-
struction to the jury, to the effect that they must take all the confessions
of the defendant made at the same time, and, if any portion of such con-
fession was exculpatory, the State must show that the same was untrue
before they could convict.   We understand that the court in effect gave
the jury this instruction.   The exculpatory fact stated by him was that
he was a hired hand; and the court gave this defense in charge to the
jury, instructing them to acquit appellant on that ground if they be-
lieved he was such hired hand.   Nor do we believe that the charge of the
court on this defense of appellant being a hired hand was calculated to
mislead or confuse the jury.   While the charge is not artistically drawn,
yet the jury were distinctly instructed, before they could convict ap-
pellant, that they must believe beyond a reasonable doubt that he was
a principal in the offense charged, and, if they believed that the only
connection appellant had with the taking of the said mule was that of a
hired hand in the employ of one Elzie Isham, to acquit the defendant.
The doctrine of principals had been previously defined by the court;
and in this connection it was not error for the court to state to the jury

that "any person who agrees to the commission of an offense, and is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act." As an abstract proposition this is correct; but there is no pretense that the proof merely showed this. If defendant was present at all, he rendered actual and positive aid in the commission of the offense; and, if he was not merely a hired hand, he was unquestionably guilty of assisting in the theft of said mule.

The court did not err in its response to the interrogatory propounded by the jury. He gave a direct answer thereto, and there was no necessity of giving appellant's requested instructions.. In fact, the instruction given and that requested were the same thing.

The objection of the defendant to the charge of the court on the ground that it failed to instruct the jury that they could not convict defendant on his confession unless the confession was corroborated by other evidence tending to establish the corpus delicti, we think we have heretofore sufficiently treated. The State did not rely alone on appellant's confession to establish the corpus delicti, but there was other testimony, we think, sufficient to establish the corpus delicti, outside of the confession; and we do not think that the necessity arose in this case for the court to have singled out appellant's confession, and to have given the requested charge. If there had been no proof in the case but confessions to establish the corpus delicti, or if the extraneous proof had been very weak or meager, then the requested instruction might have been called for. But this was not so. And, beyond this, if the corpus delicti had been based alone on the confessions, the court should have instructed an acquittal, or, in case of conviction, the point could be raised in the motion for a new trial on the insufficiency of the evidence. We do not deem it necessary to discuss this matter further, but we refer to it because it was strenuously insisted on in the argument. In our view there was no error in the record, the verdict is amply supported by the testimony, and the judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—The judgment in this case was affirmed at a former day of this term, and it now comes before us on motion for rehearing. Among other things, appellant insists that we overlooked the eighth paragraph of his motion for a new trial, which questions the charge of the court on theft of other property. His objection is as follows: "Because the court erred in paragraph sixth of his charge, wherein he tells the jury that they may consider the evidence establishing other offenses for the purpose of tending to connect the defendant with the theft herein alleged." Appellant's contention here is that there is no evidence of contemporaneous theft. An examination of the record, however, discloses that, in the confession of appellant, testified to by

Sheriff Clark, he admitted to him that he and Elzie went down and caught this Dillin mule; then a mare; then Sam Schultz' mule. He also said that Elzie told him at the time they were catching the mules that he did not know who owned the two mules. He also said that they left the horses at Tip Isham's, changed saddles, crossed the river, traveled all night Wednesday night; got to Argyle about daylight, and got breakfast; arrived at Denton Thursday; that Elzie traded one of the mules for a horse near Denton; and that they got to Gainesville that night. He also said that Elzie sold all the mules, and was to give him half the money. He further stated that they got all the stock on Wednesday night, and started to Gainesville on the same night, and that they caught the mules on the Harrison place. If this statement to the sheriff be true, then, evidently, defendant admitted to him the theft of two other animals on the same night, under circumstances which would make the theft of the other two animals contemporaneous with the theft of the mule alleged to have been stolen. True, the owners of the other two animals were not produced; but defendant's own confession admitted the fraudulent taking of said animals, and the court certainly could not be said to have given a charge to the injury of appellant, when the instruction complained of limited the testimony to its proper purpose. We think, if the court had failed to do this, there might be some ground for complaint on the part of appellant. The other questions were disposed of in the original opinion of the court. The motion for rehearing is overruled.

*Motion overruled.*