### GEORGE COMBS v. THE STATE.

No. 4283.   Decided February 19, 1908.

**1.—Murder in Second Degree—Negligent Homicide—Accidental Shooting.**

Accident is implied in negligent homicide of both the first and second degrees, and where upon trial for murder, there was evidence showing an accidental killing, and the court charged on that phase of the case, there was no error, that the court failed to charge on negligent homicide. Following Garner v. State, 34 S. W. Rep., 420.

**2.—Same—Charge of Court—Sudden Transport of Passion.**

See opinion for remarks of the court to the effect that the phrase "sudden transport of passion" should be omitted in a charge on murder in the second degree.

**3.—Same—Charge of Court—Declaration by Defendant.**

Where upon trial for murder the State put in evidence not only the declaration by defendant, but that of other witnesses, to the effect that the killing was accidental, it became the duty of the court to charge the jury that the burden rested on the State to show that the exculpatory statements of the defendant, which were in writing, were untrue, before they could find defendant guilty.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle,* for appellant.—On question of charge on negligent homicide, besides cases stated in opinion: Flynn v. State, 4 Texas Ct. Rep., 118; Morris v. State, 35 Texas Crim. Rep., 313; Austin v. State, 78 Am. St. Rep., 134; State v. Emmory, 17 Mo., 77; McConnel v. State, 22 Texas Crim. App., 354; Burton v. State, 17 S. E. Rep., 99. On question of defendant's declaration: Pratt v. State, 50 Texas Crim. Rep., 227, 16 Texas Ct. Rep., 599.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of negligent homicide: Reddick v. State, 47 S. W. Rep., 993; Blalock v. State, 49 S. W. Rep., 100.

RAMSEY, JUDGE.—Appellant was charged in the District Court of Parker County, with the offense of murder of his wife, Claudie Combs. He was convicted at the September term of said court, 1907, of murder in the second degree, and his punishment assessed at thirty years confinement in the penitentiary.

There are several interesting questions raised on the appeal: the more important of which we will now consider. The facts show that appellant and his deceased wife were quite young people; that they had been married something like two years; that there had been one or two separations between them, but they were living together at the date of her death, and no direct evidence of any quarrel or bad feeling is shown to have existed at that time, except and unless it can be found in the fact of some declarations by appellant to his neighbors in respect to getting a divorce. On the day of the homicide they had been picking cotton in a field close to where they lived, and had a wagon about half full of cotton when they concluded to remove the cotton from the wagon and go to town in it. After having removed the cotton, appellant's wife started home. He (appellant) had in the field at the time a pistol. This pistol he carried to his father's house the night before, having gone to his father's house after night and carried the pistol, as he claims, for protection; that he carried the pistol to the field the next morning, and states in his statement hereafter referred to, that he thought he had removed the cartridge from it. While en route home and while in the

field, a shot was fired, which struck his deceased wife in the back, as a result of which, a few days after this, she died. There were some two or three neighbors not far apart who, in view of the cries of appellant and his wife, came to where they were. The witness Ed Wells says: "I started to him (meaning appellant) just as quick as I heard him. He may have holloed three or four times before I got my sack off, and I started right in the direction of the holloing. I climbed through a barb-wire fence into the woods and started in the direction I heard the sound. I came out of the timber into a glade of prairie and stopped and just then I heard him say something to her, and I looked over and saw them. I asked him what was the matter. 'Oh!' he says, 'I have shot Claudie.' I said, 'How in the world did you do it?' And he said, 'I was wringing the pistol,' or 'turning the pistol around my head and it went off and shot her accidentally.' He said he was whirling the pistol around his head, snapping it, and it went off and shot her accidentally." The witness Cary testified, that appellant said to him, when he reached the scene of the shooting, in response to an inquiry as to how he had shot his wife, that "I was just throwing the pistol around my head, snapping it and it went off and shot her accidentally." The appellant had made before the assistant county attorney of Parker County a written statement, which was introduced by the State, without objections, in which appellant said, "When my wife and I started from home this morning, I forgot the pistol and went back and got it and stuck it in my hip pocket; we came back to my cotton patch and unloaded a wagon of cotton so we could use the wagon to go to town; while we were unloading the wagon, I laid the pistol down on a log but took the load out of it first; after I took the load out, I revolved the cylinder several times; don't know why I did unless it was to see if it needed cleaning. The reason I took the load out was because I was afraid it would fall off and explode. I must have put the load in before I put the pistol down on the log, for I know I did not put it in when I picked it up. I don't remember of putting the load back and did not know that it was in there when I picked it up. My wife had started on ahead of me and I was trotting along behind her, trying to catch up with her, swinging the postol around in my hand and snapping it; it went off and struck my wife." Proof was also made by Dr. Fritz, who was called to see Mrs. Combs, that he asked her how it happened; and that she said, in reply to such question, that they were in a wagon unloading some cotton, and when they got out, she started to the house to get ready, and her husband started to get the mules and was coming after her to go to town, and the pistol went off and shot her; that George (meaning appellant) had not intended to shoot her; that the shooting was accidental.

In this state of the proof, appellant most strenuously contends that the court erred in not giving a charge on negligent homicide in the first and second degree, and in support of this contention refers us to the case of Bradshaw v. State, 50 S. W. Rep., 359. The Bradshaw case is,

in its facts, very much like the case at bar, and is authority for the proposition that if the court had submitted the issue of negligent homicide in the first degree and a conviction had resulted, that such submission and conviction would have been justified under the law by the facts was error in this case, in view of the charge given by the court, to fail of this case. We do not believe, however, under the authorities that it to submit the doctrine of negligent homicide. The court gave a charge in which he instructed the jury very clearly that if the shooting was an accident that the defendant was entitled to an acquittal. In the case of Garner v. State, 24 S. W. Rep., 420, a question similar to the one here raised was before the court. In that case, as in this, appellant had shot and killed his wife. The theory of the State in that case as in this case, was that the shooting was murder, and the theory of the defense was that the killing was accidental homicide. It appears in the Garner case that at the time of the killing that appellant was whirling a ·pistol in play when it accidentally fired. It was complained and the distinct issue was made in this case that the court erred in failing to instruct the jury in respect to the various grades of accidental homicide. In passing on the question Judge Simkins, who wrote the opinion of the court, says: "There was no necessity of instructing on the various grades and punishments of accidental homicide. If there was no murder in the case, the appellant should be acquitted, and the court so charged the jury. We cannot see how the appellant can complain of this omission. It was for his benefit. Green's case, 27 Texas Crim App., 244." And, so in this case, if it be conceded, as we think the facts show, that the evidence raised the issue of negligent homicide, still the failure to submit this degree of the offense charged can furnish no just ground of complaint to the appellant. If it was an accident, from the charge of the court as given, appellant was entitled to an acquittal. Accident is implied in negligent homicide of both the first and the second degrees, and in many cases of accidental killing, the defendant could not be convicted even of homicide in either of these degrees. We think, therefore, and so hold, that the charge of the court in this respect cannot be complained of by appellant.

Complaint is made of the following portion of the court's charge: "If you believe from the evidence beyond a reasonable doubt that the defendant in Parker County, Texas, with a pistol and if the same was a deadly weapon or instrument reasonably calculated and likely to produce death from the mode and manner of its use in a *sudden transport of passion* aroused without adequate cause, with the intent to kill, did shoot and thereby kill Claudie Combs, as charged in the indictment, you will find him ·guilty of murder in the second degree, and so say in your verdict." It is urged that this charge is not the law of the case, nor is it applicable to the facts in this case, for there was no evidence in the record calling for such charge. That there was no evidence whatever that the parties had had any quarrel or that there was at any time any ill-feeling between them and the evidence does not raise the

issue or suggest the fact that the killing was in a *sudden transport of passion*. This charge has not infrequently been criticised and condemned by this court, notably in the case of Kannmacher v. State, 51 Texas Crim. Rep., 118, 101 S. W. Rep., 238. But this charge has usually been criticised where it is included in a definition or instruction with reference to the distinctive difference between murder in the second degree and manslaughter. We should not be inclined to reverse the case on the occurrence of these words, in what is otherwise, in respects complained of, a most admirable charge, but we suggest to the court in view of another trial that this language should be omitted.

We think, however, that the case must be reversed for the reason that the court failed to charge the jury that the State having introduced in evidence the written statement of appellant, in substance to the effect, that he had killed the deceased, but that such killing was an accident, that the burden rests upon the State to disprove by the evidence the statement of the killing as explained in said statement. As far back as the case of Pharr v. State, 7 Texas Crim. App., 472, the following charge given in that case, was approved as a correct enunciation of the law: "When the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admissions or confessions are to be taken together, and the State is bound by them unless they are shown to be untrue by the evidence; such admission or confessions are to be taken into consideration by the jury as evidence in connection with all the other facts and circumstances of the case." In the case of Pratt v. State, 50 Texas Crim. Rep., 227, 16 Texas Ct. Rep., 599, Judge Davidson reviews at some length the authorities in this State on this question. In that case he reaches the conclusion, as follows: "However, we are of opinion that in all cases where admissions and confessions of a defendant are admitted in evidence against him, and such admissions or confessions contain exculpatory or mitigating statements, it would be proper and just to the defendant to instruct the jury as was requested in this case." It was said in the case of Jones v. State, 29 Texas Crim. App., 20: "We do not wish to be understood as holding that in all cases where the admission or confession of a defendant are admitted in evidence against him, that it is necessary to give such or a similar instruction to the jury. What we decide is that in this case, in which the criminating evidence consists almost entirely of defendant's admissions that he killed deceased, instruction should have been given, in view of the fact that the exculpatory portion of defendant's statements about the homicide were not shown by the State's evidence to be untrue." It appears from an examination of the opinions that in very many of the cases an instruction had been requested to the effect, that where the State puts in evidence a statement or admission or confession of a defendant, that the burden rests on the State to show that the exculpatory statements therein contained are untrue; but we do not believe it is absolutely essential that such charge should be requested. It is

made by law the duty of the court to instruct the jury with reference to every issue of fact raised by the evidence. In this case such a charge was undoubtedly demanded by the facts, if it could ever be said to be required in any case. Here the State had put in evidence not only the declarations made by the defendant to his friends and neighbors, who had hurried to the scene of the unfortunate tragedy, but the prosecuting officers of Parker County had obtained from the appellant a statement in writing as to the events and circumstances of the homicide. This statement was made and subscribed to by appellant and is produced in evidence by the State. They were not compelled to offer it, and when they do offer it, certainly the jury ought to be informed that being so introduced by the State, that the burden rests on them to disprove any exculpatory facts contained in such statement.

For the error of the court in refusing to give such instruction, the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*