GEORGE COMBS v. THE STATE.

No. 4594. Decided February 17, 1909.

**1.—Murder—Evidence—Motive.**

Where upon trial for murder the evidence showed that defendant killed his wife, which he claimed was accidental, there was no error to admit evidence tending to show abandonment, indignities and a reckless disregard of the marital relations on part of defendant, separation and hate, instead of love for his wife, to establish malicious motive and premeditated design.

**2.—Same—Argument of Counsel—Defendant's Failure to Testify.**

Where upon trial for murder it was only by strained construction that State's counsel's language could be construed as alluding to defendant's failure to testify, and that counsel was discussing the testimony and drawing his conclusions therefrom, there was no error; besides the matter was withdrawn by a charge of the court.

**3.—Same—Sufficiency of the Evidence.**

See opinion for evidence held sufficient to support a verdict of murder in the second degree.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle* and *Preston Martin,* for appellant.—On question of defendant's failure to testify. Sample v. State, 52 Texas Crim. Rep., 505; Huff v. State, 19 Texas Ct. Rep., 237; Baughman v. State, 49 Texas Crim. Rep., 33, 14 Texas Ct. Rep., 254; Martinez v. State, 48 Texas Crim. Rep., 133, 12 Texas Ct. Rep., 671; Wallace v. State, 46 Texas Crim. Rep., 341, 10 Texas Ct. Rep., 915;

Washington v. State, 8 Texas Ct. Rep., 944; Hunt v. State, 28 Texas Crim. App., 149 and 150; Dawson v. State, 24 S. W. Rep., 414; Brazell v. State, 33 Texas Crim. Rep., 333; Vaden v. State, 52 Texas Crim. Rep., 299, 20 Texas Ct. Rep., 404.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—This is the second appeal of this case. For former opinion see 52 Texas Crim. Rep., 613. See statement of facts in said opinion, and in addition thereto we wish to add that the evidence in this record shows that deceased started home, after assisting appellant in unloading some cotton. Appellant started to accompany deceased, walking behind her. After going a few steps he discovered that he had forgotten his pistol, which he had laid on a log near the wagon where the cotton was unloaded, and stepped back to the log and secured his pistol, and according to his statement began to whirl the pistol around over his head, snapping the same while so whirling it. That it went off and struck the deceased in the back, from which wound she died in about ten or twelve hours. Appellant's statements furthermore was that when the pistol was accidentally discharged he dropped the pistol, rushed to where deceased had fallen, she going in a northwest direction, and after assisting her a while returned to where he dropped the pistol, took the same and threw it over in some bushes and returned to where the deceased was lying on the ground, making the statement that he had thrown the pistol away and now it could not hurt her any more. The evidence before us shows conclusively that there were no tracks between where appellant dropped the pistol and where deceased lay, except tracks going in a northwest direction towards the body of deceased, thereby indicating the falsity of appellant's statement that he returned to where he dropped the pistol, threw it away and returned to the body of deceased. If this statement had been true, the tracks would have been very apparent there on the ground according to the testimony of witnesses and showed the return as indicated in his statement.

Bills of exception show the State was permitted, over appellant's objection to prove by Wm. R. Woodruff, that he saw defendant one day at a picnic at the Brazos Bridge, across the Brazos River, July, 1906, and saw Edgar Hill there. "Appellant asked me if his wife was there, and I told him, 'Yes,' but she was not there. I was mistaken." Thereupon appellant stated: "There is a man that no doubt cares more for my woman than I do."

The State proved by R. A. Light that he had a conversation with defendant in 1906, at a time when defendant and his wife were separated. Defendant said married life did not suit him.

By Walter Buchanan the State proved that in 1906 the defendant said to him that he thought it ought to be against the law for chil-

dren to marry; that it did not suit him no way, and he did not think he would live that way. He and his wife were separated at this time but not divorced.

The witness Wells testified that about two weeks before the homicide he had a conversation with the defendant, and at that time the defendant and his wife were living together, in which conversation defendant stated, that "it was a damned sight easier to get a woman than it was to get shut of one."

The witness Ed Wells testified that he had a conversation with defendant about his, defendant's, wife, sometime in the summer of 1906. That defendant suspected that he (Wells) was mad at him and asked witness if it was true, and being informed that it was not, defendant replied: "I thought may be Claudie had been up and told you all a whole lot and you were mad at me. I don't want you all to get mad at me, you seem like my own folks." Witness replied: "No, she has not told us a thing. What is the matter with you and Claudie? And I think the answer he gave me was that he did not think enough of her to live with her, and he says, 'She is nasty.' I just remarked that I have never seen nothing nasty about her, and he said, 'She does not keep her person clean.' I said, 'She don't keep her person clean? I don't know anything about that, but she could not keep herself clean dragging in the field like she does, if she washed forty times a day.' And I believe he said, that she could keep herself cleaner than she does. Then he remarked, 'What did the folks say about giving me a divorce up there?' And I said, 'They did not say nothing much.' And he said, 'They had just as well give it to me, for I am going to have one.' I said, 'It would be pretty hard to get one if she did not want to give it to you.' I told him that he would have a pretty hard time trying to get one if she did not want him to have it; but I said, 'She can get a divorce.'"

The State proved, over appellant's objection, by Lucy Wells that she was called to the defendant's house to see his wife in 1905. The wife was in bed when the witness was at appellant's house. The witness testified: "George (meaning defendant) was there. The wife was suffering. When I went in the room, he went out of it, and he would not stay in the room when I was there. I told him to phone for his mother, and he said he had; and I told him to get her there. I did not hear George speak to his wife at all. He just passed through the room, in and out; he did not ask me at all about his wife's condition; he knew I was right with her. I knew before I went there that she was sick. Before I got quite to the gallery, while I was still in the yard, I heard exclamations made by her. George was standing by the door; he was not close to her. I do not know what he was doing when I went in there."

The State proved by Gorden Sparks that he had a conversation

in 1905-06, with defendant about his wife. Defendant stated to witness that he did not care anything about his wife; that he just married her to spite Mr. Howell (her father) and Edgar Hill, a lover. He said to witness that if witness would go with him to Weatherford that night he would sell the team and they would leave. All of this testimony above detailed was objected to on the ground that it was immaterial and did not tend to prove threats, and was calculated to prejudice the rights of the defendant. In this case the defendant is charged with the murder of his wife. All of the above evidence was admissible to show the relationship and feeling of appellant towards his wife. Some of the testimony above detailed rather meagerly suggests the relationship existing between the wife and husband, but it does show a marked difference on the part of the husband to the wife, and the evidence, however, in a general way, tends to show abandonment, separation, slights and indignities, and a reckless disregard of the marital relation which is altogether pertinent testimony to give color to the State's insistence that appellant hated instead of loved his wife. And if he hated his wife it certainly would be a strong fact to strengthen the State's insistence that the homicide was not accidental but perpetrated through malicious motives and premeditated designs. We, therefore, hold all of the evidence above detailed was admissible. It seems on the former trial of this case this evidence was admitted without any bill of exceptions to same, but a bill of exceptions was reserved to the statement of each witness as above detailed upon this trial.

From bill of exceptions No. 10 it appears that private prosecutor, J. M. Richards, Esq., in making his closing address to the jury in behalf of the State, in reply to an assertion of R. B. Hood, Esq. (one of defendant's attorneys), who had said that there had not been any evidence introduced to show any mistreatment on the part of defendant towards his deceased wife, said: "Mr. Hood forgot the testimony of Tom Baker, who in company with the defendant went to the home of Wm. Howell, father of deceased, when Mr. Howell said to defendant, 'George, you have caused me nothing but trouble since you married Claudie. Some things can be hid and some can not. If I was like some men I would take my gun and kill you, and you know it.' And defendant said, 'Yes.' Again, you will remember Baker and Mrs. Howell testified that defendant fell upon his knees out on the porch in the presence of his wife, Miss Jennie McFall, Miss Mary Nash, Mrs. Howell and a sister of deceased, and said that he had treated Claudie worse than a dog; that she had always been good to him and that he alone was to blame and that he asked forgiveness. Did defendant say these things? Baker and Mrs. Howell say he did. And when Howell charged him in presence of Tom Baker with his bad treatment of his daughter, defendant did not then deny any part of it. Don't

you know if it had not been true, he would then and there have promptly denied such? It is the duty of every one when a false charge or accusation is made against him in his presence to promptly deny it; and if he does not the presumption is that the accusation is true, and that he is guilty of such accusation. In other words, when a man is charged with a crime and stands by mute and makes no denial it is an evidence of his guilt." And to the last part of said remarks, to wit: "When a man is charged with a crime and stands by mute and makes no denial it is an evidence of his guilt," appellant objected because same was unwarranted and was a reference to the failure of the defendant to testify in his own behalf in this cause, defendant having failed to testify. Defendant then and there requested the court in writing to instruct the jury to disregard said objectionable remarks, which said written instructions the court gave in charge to the jury; and when counsel for the State made use of said objectionable language, defendant then and there excepted to said remarks, for the reason that same were unwarranted and was a reference to the failure of the defendant to testify in his own behalf. It is only by strained construction that the above language can be construed as alluding to the failure of the defendant to testify. If you take the statement made by the prosecuting attorney in its logical sequence, it clearly appears that the prosecuting attorney was discussing the failure of the defendant to deny the mistreatment of his wife to the wife's father and mother, and then closes the statement with additional declarations that when a man is charged with a crime, and stands mute and makes no denial, it is an evidence of his guilt. Clearly so. Guilty of what? Guilty of mistreating his wife, according to the statement in this bill of exceptions. Not that he was sitting there being tried without answering anything; but because the prosecutor, under the terms of this bill, was discussing an incident at the home of appellant's father-in-law, in which he was accused of maltreating his wife, and said his silence gave consent, and his failing to deny proved his guilt. In addition to this, we have held that any bare allusion by the prosecuting attorney to the failure of a defendant to testify would not operate a reversal of the case; but we can not even hold this a bare allusion to the fact. But if it were, we would not feel warranted in reversing the case under the circumstances detailed above. However, the court in this case charged the jury not to regard the latter statement of the prosecuting counsel. This certainly did cure any error in the matter, if any existed.

There is but one other question remaining for consideration, and that is the sufficiency of the evidence in this case, which is strenuously insisted upon by appellant as being insufficient. We can not agree to this statement, but believe the evidence supports the verdict. It is true the jury only gave appellant five years for murder in the second degree. It is furthermore true, on a former appeal they gave

him thirty years; but we can not predicate the sufficiency of the evidence upon the caprice of a jury in assessing the punishment. While the evidence is circumstantial and like all circumstantial cases is seldom as strong as it ought to be or might be, yet we believe that, taking the environments of this case, the cruel wanton treatment of deceased by appellant, his separations from her, the reckless way in which even he insists the act was done, his falsehoods in reference to how it was done, and the contradictions proved by the physical facts upon the ground, all tend strongly to fasten the guilt upon appellant and show that he is guilty of the dastardly crime of murdering the wife of his bosom.

The judgment is affirmed.

*Affirmed.*