H. D. PICKENS v. THE STATE.

No. 5499.        Decided February 18, 1920.

1.—Murder—Exculpatory Evidence—Charge of Court—Declaration by Defendant.

Where, upon trial of murder, the State introduced the declaration of defendant that he had killed the deceased who had run his hand in his pocket and told the defendant not to meet him any more, and that he acted in self-defense, but in addition to said statement other criminating evidence was introduced and was sufficient to establish the falsity of the exculpatory or mitigating facts accompanying the declaration, and the court instructed on self-defense, apparent danger, and on threats, and by a specific charge covered the defense theory suggested in the exculpatory statement connected with the confession introduced by the State, there was no error in the court's failure to instruct the jury that the burden rested upon the

42—86—T. C.

State to disprove the said statement explaining the killing. Following: Casey v. State, 54 Texas Crim. Rep., 587, and other cases.

### 2.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder, there were phases of the evidence which might, in the opinion of the jury, have been sufficient to mitigate the offense to manslaughter which came from other witness than defendant, such as assaults, insults, and threats on former occasions, etc., and the defendant requested a charge on manslaughter, the same should have been submitted and the court's refusal to do so was reversible error. Following: Lundy v. State, 48 Texas Crim. Rep., 217, and other cases.

### 3.—Same—Evidence—Clothes of Deceased.

Where, upon trial of murder, there was an issue as to the location of the wounds there was no error in introducing in evidence the clothes worn by the deceased, and the facts relating thereto as to whether deceased was shot from ambush or whether he was facing the defendant.

Appeal from the District Court of Freestone. Tried below before the Hon. A. M. Blackmon, judge.

Appeal from a conviction of murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*R. L. Williford* and *R. M. Edward,* for appellant.—On question of manslaughter; Burton v. State, 77 Texas Crim. Rep., 314, 178 S. W. Rep., 334; Mason v. State, 211 S. W. Rep., 593; Adams v. State, 60 id., 47; Johnson v. State, 22 Texas Crim. App., 324; Baltrip v. State, 17 S. W. Rep., 1106; Lienpo v. State, 12 id., 588.

On question of exculpatory statement: Wool v. State, 201 S. W. Rep., 1002; Sharp v. State, 81 Texas Crim. Rep., 256, 197 S. W. Rep., 207; Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138, and cases stated in the opinion.

On question of introduction of clothes of deceased: Gellespie v. State, 80 Texas Crim. Rep., 432, 190 S. W. Rep., 146; Corley v. State, 69 Texas Crim. Rep., 626, 155 S. W. Rep., 227; Williams v. State, 61 Texas Crim. Rep., 356, 136 S. W. Rep., 771; Cole v. State, 75 id., 527.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of refusal of charge on manslaughter: Burns v. State, 65 Texas Crim. Rep., 175, 145 S. W. Rep., 356; Hardeman v. State, 61 Texas Crim. Rep., 111, 133 S. W. Rep., 1056; Dougherty v. State, 59 Texas Crim. Rep., 464, 128 S. W. Rep., 401; Canon v. State, 59 Texas Crim. Rep., 398, 128 id., 141. On question of exculpatory statement: Casey v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 534.

On question of introducing clothes of deceased; Milo v. State, 59 Texas Crim. Rep., 196, 127 S. W. Rep., 1025; Watson v. State, 205 S. W. Rep., 662.

MORROW, JUDGE.—The appellant shot and killed Wilhite, and is under conviction of murder with a sentence of confinement in the penitentiary for seven years.   The issues submitted, in addition to murder, were self-defense on apparent danger and on threats of the deceased. The State's theory is that the appellant lay in wait and shot the deceased from ambush.   In support of this theory circumstances were introduced.   The deceased, at the time he was killed, was in the enclosure or farm of a witness by the name of Reese.   The deceased had borrowed a wagon and horse from Reese; had on the morning of the homicide returned the horse and wagon, and a short time after he had left the home of Reese on horseback he was killed.   The State introduced testimony showing that the road where the homicide took place was skirted by some trees and bushes, and that. there were   tracks of some person on the ground near the place where the body was found, and that there were also depressions in the leaves in some bushes, and some twigs cut or broken off the bushes at the point where according to the State's theory, the appellant secreted himself when he fired the shot.   A single-barrel shotgun was used, and ten buckshot struck the breast of the deceased, according to the State's theory, coming from the side rather than from the immediate front.   Reese was at a well drawing water, and after the deceased departed had drawn two buckets of water when he heard a gun fire, and seeing the horse of the deceased loose in the field he immediately went in the direction of where he heard the shot fired, and before reaching the point saw the appellant on foot; and as he approached nearer the point where the deceased was killed, the appellant riding horseback met the witness and there had a conversation with him which the State introduced as follows:  The appellant said, "I have killed the old man. He ran his hand in his pocket, and said for me not to meet him any more."   From Brumley the State elicited testimony that. the appellant, subsequent to the homicide, had said: "I have got myself into trouble;" and the witness replied: "That is what I have heard;' and the appellant said, Yes, he had killed the old man; that the deceased cursed him, threw his hand behind him, and said: God damn you, I told you not to meet me again;" that appellant further said that he then began to untie his gun, which was tied to his saddle, and that he thought he would never get it untied.

The appellant advanced the proposition that upon the record thus presented, the jury should have been instructed in substance that the State, having introduced the admissions of the appellant showing that he had killed deceased, the burden rested upon the State to disprove by the evidence the statement also introduced by it explaining the reason for the killing. That, where the declaration introduced by the State to prove its case contains exculpatory or mitigating statements, it is encumbent upon the court in a proper case upon request of the accused to instruct the jury in appropriate language

that the statement is to be taken together, and that if the exculpatory statements mitigate or excuse the homicide the burden is upon the State to disprove them, is a legal principle which has received the sanction of this court in Pharr's case, 7 Texas Crim. App., 472, and in numerous subsequent instances, notably Pratt v. State, 50 Texas Crim. Rep., 227; Combs v. State, 52 Texas Crim. Rep., 616; Pratt v. State, 53 Texas Crim. Rep., 281; Banks v. State, 56 Texas Crim. Rep., 262.

This, however, is not an unfailing rule having application in all cases. In Jones' case, 29 Texas Crim. App., 21, the court said:

"We do not wish to be understood as holding that in all cases where the admissions or confessions of a defendant are admitted in evidence against him that it is necessary to give such or a similar instruction to the jury. What we decide is that in this case, in which the criminating evidence consists almost entirely of defendant's admission that he killed the deceased, the instruction should have been given, in view of the fact that the exculpatory portion of defendant's statements about the homicide were not shown by the State's evidence to be untrue. We are of the opinion, however, that in all cases where admissions and confessions of a defendant are admitted in evidence against him, and such admissions or confessions contain exculpatory or mitigating statements, it would be proper and just to the defendant to instruct the jury as was requested in this case."

In Slade's case, 29 Texas Crim. Rep., 392, the ruling was that the charge mentioned was not required, where the State used, in addition to the confession, other criminating evidence to substantially the same facts, and where the evidence introduced by the State was sufficiently efficient to establish the falsity of the exculpatory or mitigating facts accompanying the confession. On the subject the court, speaking through Judge Davidson, in the case of Casey v. State, 54 Texas Crim. Rep., 587, disposed of the question as follows:

"There were no eyewitnesses to the transaction who testified on the trial except appellant. The State, therefore, introduced appellant's statement through some of the witnesses as to how the transaction occurred. Had the case closed at this point, appellant's contention that the court should have informed the jury that the State would be required to disprove his statements in order to obtain a conviction, under the authority of Jones v. State, 29 Texas Crim. App., 20; Pratt v. State, 50 Texas Crim. Rep., 227; and Slade v. State, 29 Texas Crim. App., 381, would be correct. For a full discussion of the matter, in addition to the cases cited, see Combs v. State, 52 Texas Crim. Rep., 613; and Pratt v. State, 53 Texas Crim. Rep., 281. However, this charge may not be necessary in this case inasmuch as the defendant took the stand in his own behalf and testified fully in regard to the facts of the case, and the case was not, therefore, one alone based upon defendant's confessions or

statements. As the case is presented, therefore, we would not feel called upon to reverse the judgment for this omission in the charge.''

In the instant case, it cannot be said that the State relied upon the inculpatory evidence elicited in the manner related. The appellant's proximity to the deceased, in possession of the weapon at the time that Reese, the first witness, reached a point where he could be seen, was itself sufficient to connect the appellant with the homicide. The appellant testified in the case, declaring that he had killed the deceased, and describing in detail the incidents of the homicide and the matters leading up to it. He stated that some weeks before the homicide he had had occasion to go on the premises of the deceased, when the deceased, without provocation, drew his knife and seized the appellant by the wrist, using violently abusive language towards him, finally with an oath threatening to kill him if he caught him again in his pasture; that he had seen him again in a crowd, all of whom spoke to him except the deceased; and had later seen him in a pasture with a gun in his hands, when the deceased had refused to return his salute. He had been on the premises of Reese on the day preceding the homicide in search of cattle, and returned the following day upon a similar mission; and said: ''I opened the gate and got fifteen or twenty steps inside when Wilhite came around the bend or curve in the road about sixty steps from the gate, and when he was discovered was approaching, meeting me. He hollered: 'God damn you, I told you not to meet me any more.' I stopped my mare, and he made like he was getting his gun. I had my gun tied to my saddle, and untied it, and told him to hold up. He rode up to about fifteen steps, and I jerked my gun to fire. My mare was frightened, and ran around within about 10 steps of him. I saw he was dead, and went to tell Mr. Reese. I got nearly to the bend, and saw Reese coming, and I stopped and waited, and when he came I said 'Reese, I have killed the old man.' He said, 'You have?,' and I said, 'Yes.' I said, 'Don't put your hand on that man.' 'If he heard me he didn't pay any attention. He pulled his arm and touched him, and said, 'The poor old man is gone.' I said 'Yes, I hated it as bad as anyone.' '' The appellant said that he was a much smaller man than the deceased; that he was excited because he thought the deceased was going to shoot him, and would not have killed deceased except to save his own life. The State in rebuttal introduced statements of the appellant at the examining trial, and other statements by the appellant made to various witnesses. The witness Holloway said that on the day of the homicide, after it occurred, the appellant said he had done just what he was ''aiming'' to do that morning.

Appellant was accorded an unqualified charge on the law of self-defense on apparent danger and on threats, accompanied by a specific instruction covering the defensive theory suggested in the exculpatory statements connected with the confession introduced by the State.

Thus emphasis is given to the view heretofore intimated that appellant's rights were not transgressed in the failure to give the charge touching the burden resting on the State to disprove the exculpatory statements. See Tidwell v. State, 40 Texas Crim. Rep., 41.

The appellant requested and the court refused a charge on manslaughter. It has frequently been said, and it is manifestly true, that when the only affirmative defensive theory raised by the evidence is that of self-defense, a charge on manslaughter is not proper. But it often happens that a charge is demanded upon both issues, and when such is the case its omission as to manslaughter where requested is error. Bonner v. State, 29 Texas Crim. App., 230; Swain v. State, 48 Texas Crim. Rep., 98; Nelson v. State, 48 Texas Crim. Rep., 274; Miller v. State, 52 Texas Crim. Rep., 78; Green v. State, 58 Texas Crim. Rep., 428; Williams v. State, 61 Texas Crim. Rep., 361; Lara v. State, 48 Texas Crim. Rep., 568.

Taken separately, neither threats nor insulting words, nor battery slight in its nature, constitutes adequate cause within the meaning of our statute; but the concurrence of these have been frequently so regarded. Wadlington v. State, 19 Texas Crim. App., 274; Lunday v. State, 48 Texas Crim. Rep., 217; Howard v. State, 23 Texas Crim. App., 279; Howard v. State, 23 Texas Crim. App., 280; Bonnard v. State, 25 Texas Crim. App., 173; Swain v. State, 48 Texas Crim. Rep., 99; Anderson v. State, 60 Texas Crim. Rep., 315.

In Lundy's case the evidence requiring a charge on manslaughter was given by the accused as follows:

" 'I came up and about the time I got within ten feet of Mr. Anderson he made the remark,"Get out of the road, you son-of-a-bitch, or I will fill you full,'' and probably called my name. I came on around the wagon. I do not know whether I was clear out of the road or not. I might have been out of the road. I was excited. When I got around the horses, he threw himself back, and put his hand down in this manner, as I supposed to get a pistol, I had my pistol along with me; had it on my right side, in front, stuck down in my pants, between my pants and my drawers. When he made this motion which I thought was an attempt to draw a gun, I jerked out my pistol and fired. I did not take any sight, but fired as quick as I could. It was a single action gun, and I fired two shots.' "

In a doubtful case the charge on manslaughter should be given. McLaughlin v. State, 10 Texas Crim. App., 359; Halbert v. State, 3 Texas Crim. App., 656; Arnwine v. State, 49 Texas Crim. Rep., 6.

The exculpating facts immediately attending the homicide in the instant case rested upon appellant's testimony alone. There were other phases of the evidence which might, in the opinion of the jury, have been sufficient to mitigate the offense to manslaughter which came from the lips of other witnesses. Among these were the facts that the deceased had assaulted, insulted, and threatened the life of the appellant on a former occasion when he was armed;

that the deceased was frequently armed, and when last seen by the appellant before the homicide had a gun in his possession; that the place of the homicide was an unfrequented road obscured by the growth of trees and bushes; that there was considerable disparity in the size and strength of the parties. The jury may have accepted the appellant's testimony that the meeting was a sudden and unexpected one, and have believed that this, in connection with the previous relations of the parties and the other facts mentioned above, produced, anger, rage, or terror, such as rendered the appellant's mind incapable of cool reflection, and that in consequence of the passion thus aroused, he magnified or misinterpreted the conduct of the deceased, and acted in a manner so precipitate as not to excuse him entirely, but in a manner in which—if they had been so privileged—. the jury might have reduced the offense to manslaughter. See Rutherford v. State, 15 Texas Crim. App., 247; Bonner v. State, 29 Texas Crim. App., 230; Green v. State, 58 Texas Crim. Rep., 428; Lee v. State, 54 Texas Crim. Rep., 385; Burton v. State, 77 Texas Crim. Rep., 314, 178 S. W. Rep., 334. This view is emphasized by the fact that there was proof on the trial that the deceased at the time of the homicide was not armed. It would not be unnatural or unreasonable for the jury to reach the conclusion that appellant was mistaken in his assumption that the deceased was about to draw a weapon, if they did not believe that he shot from ambush. They might have thought he shot unnecessarily and too quick, but under excitement and passion which was adequate to and did render his mind incapable of cool reflection. We believe, under the rules prevailing, that the court was not warranted in refusing the appellant's request to instruct the jury on the law of manslaughter.

We think that there was such a controversy growing out of the testimony of the appellant touching the location of the parties at the time the shot was fired, and the testimony of witnesses describing the wounds and other surrounding circumstances, as rendered it competent for the State to use the clothes worn by the deceased and the testimony relating thereto adduced upon the trial, as tending to solve he controverted issue wheher the deceased was shot from ambush as claimed by the State, or was shot while he and the appellant were facing each other on horseback after a mutually unexpected meeting as claimed by the appellant.

We find no other matters presented which reveal reversible error, and none likely to occur upon another trial that require further discussion.

Because of the failure of the court, in response to appellant's request, to charge on the law of manslaughter, the judgment is reversed and the cause remanded.

*Reversed and remanded.*