### Jesus Lara v. The State.

#### No. 3172. Decided October 25, 1905.

**1.—Murder—Husband and Wife—Void Marriage.**

On a trial for murder where the testimony of a State's witness was objected to by the defendant because she was his wife, and the evidence showed that she had married defendant in jail shortly before the trial, and that she had a living husband at that time, and that her marriage to defendant was illegal and void, there was no error in admitting her testimony.

**2.—Same—Evidence—Declaration and Acts of Third Party.**

On a trial for murder it was error to admit in evidence the acts and declarations of third parties not shown to have been authorized by appellant.

**3.—Same—Evidence—Threats—Charge of Court—Self-Defense.**

On a trial for murder where the testimony of the defendant showed threats on the part of the deceased against him, and that thereafter he met deceased who made a violent assault upon him and that thereupon he shot him, it was reversible error on the part of the court not to charge on the law of threats in connection with self-defense.

**4.—Same—Self-Defense—Assault—Threats—Charge of Court.**

On a trial for murder where the evidence showed that the deceased had made threats against defendant and thereafter violently assaulted him whereupon he shot deceased, it was not necessary that the jury should believe that each effort to injure defendant was committed by deceased before defendant could avail himself of the right to self-defense, and it was error on part of the court to substantially charge to that effect. See opinion for substance of charge which should have been given.

**5.—Same—Manslaughter—Charge of Court—Adequate Cause.**

On a trial for murder where the evidence showed that the defendant had been previously warned of threats against his person by deceased, and that suddenly meeting him he violently assaulted defendant, whereupon defendant killed him, the court should have charged that if defendant's mind was incapable of cool reflection and he slew deceased under anger or fear, producing sudden passion from an adequate cause, they should have convicted him of manslaughter.

**6.—Same—Statement of Facts—Adjournment—Twenty Days Order—Bill of Exceptions.**

Where on appeal from a conviction of murder appellant's affidavit showed that he exercised the utmost diligence to ascertain whether an order permitting him to file bills of exception and statement of facts within twenty days after adjournment had been entered by the court, but could not ascertain prior to such adjournment, and that he had a right to believe that said° order was entered on the court's docket, said bill of exceptions and statement of facts should be considered on appeal.

Appeal from the District Court of Uvalde. Tried below before Hon. R. H. Burney.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*L. Old,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment fixed· at ten years confinement in the penitentiary.

The tenth bill of exceptions shows the following: The State placed upon the stand Maria Lara, to which appellant objected solely because said Maria Lara was then and there the wife of defendant Jesus Lara. The court overruled defendant's objections and allowed the said Maria Lara to testify, among other things, as follows to wit: "I was at home the night of the homicide. Deceased left my house, and in a minute or two I heard three shots fired, and heard deceased calling. I jumped through the window and saw Jesus Lara (defendant) standing there, and heard something like the snapping of a pistol, and then Jesus Lara ·ran away, and I heard deceased Juan Rodriquez say, 'Jesus Lara shot me.'" The court appends the following explanation to the bill: "The State, by her attorney, tendered said witness as Maria Campos. Thereupon defendant, by attorney, requested the court to retire the jury stating that he had objections to urge against the competency of said wit-

ness that he did not wish to make in the hearing of the jury. Accordingly the jury were retired, and then defendant's attorney made the objection as stated in the bill, that the witness was in fact now Maria Lara, and the wife of defendant, and for this reason he objected to her testifying against defendant. To which counsel for the State replied that it was true that said Mexican woman had been, through the connivance and subterfuge of defendant's attorney and others, led into going through the form of marrying defendant in jail two nights before; but that said pretended marriage was void, because said Maria was already a married woman, and had been and was legally married to one Juan Martinez Campos. Thereupon, and while the jury were still retired, the court proceeded to hear evidence as to this status of said witness, Maria Campos, and as to the validity of her said pretended marriage with defendant Jesus Lara. Upon an examination of the inquest papers, the court found that the justice of the peace holding the inquest over the body, Juan Rodriquez, the party whom defendant was charged with the murder, had just after the killing taken the testimony of said witness Maria Campos, and it disclosed the fact that said witness had testified, in October, 1904, that she was a married woman. The said witness Maria Campos was sworn and testified before the court that she had married said Campos at her aunt's house in Chihuahua, Mexico, some five years ago; that her father and mother were dead at the time, and she lived with her aunt. That a judge of the court married them, and that she and her husband sometime afterward moved to the town of Uvalde, Uvalde County, Texas, where they lived together in a house out near the depot until about two years ago, when her husband left her, and she had not heard from him since; that she had not heard he was dead and she did not know he was dead and she did not know where he was at this time. She further testified that she had never been divorced by any court from her said husband. She also testified that defendant's attorney and others came to her home the night before the trial began, and that she went with them to the jail and was then married to defendant in this case, believing she had a right to do so. Henry W. Baylor, sheriff of Uvalde County, being sworn, testified that he knew witness Maria Campos; that she lived here in Uvalde out near the railroad depot; for quite a while she lived with one Juan Campos, as he understood him to be called; that they lived in the same house together, and claimed to be husband and wife. He left some two or two and a half years ago, and I have not seen him since. Defendant made no offer to show that any divorce had ever been granted as between said witness and her husband said Juan Martinez Campos, nor to show that said husband was in fact dead. Thereupon I held that the said marriage by said witness to defendant was illegal and void, and that said witness Maria Campos was a competent witness, recalled the jury and permitted the State to introduce her evidence, the same as any other witness; and defendant by his attorney took his said bill of exceptions."

Under the explanation of the court we do not think there was any error in the ruling, since the evidence showed clearly that the witness had married appellant while she had a living husband. Therefore, the marriage to appellant was void.

By the eleventh bill of exceptions, appellant complains: "That Maria Lara, formerly Maria Campos, was permitted to testify, as follows: 'A night or two before the trial of this case, L. Old, Esq., (defendant's attorney) Hal Bowles and Sam Johnson (deputy sheriff of Uvalde County) came to my house in Uvalde, after dark, and had a conversation with me about marrying defendant, Jesus Lara, and we all came to town together, and went to the jail.'" Appellant objected to this testimony, because it was action and declarations of parties other than defendant, in no way connected with the offense; long after the same had been committed, and in his absence, he being in jail and not acquiescing in the same. The court overruled these objections, and said testimony was permitted to go to the jury. We do not think this testimony was admissible against appellant. The fact that appellant married the witness would be admissible, and the fact that appellant sent said parties to witness for the purpose of getting her to marry him would be admissible, he having taken the stand in his own behalf. But any acts or declarations of third parties not shown to have been authorized by appellant, would not be admissible against him.

Bill No. 24 shows that appellant testified in his own behalf, as follows: "I went with Marcus Corsallis down toward Maria's house; when we got near to Maria's house, we came upon six or seven men. Juan Rodriquez (deceased) was one of them. He started up to me, and said, 'Here you come, you son-of-a-bitch,' grabbed hold of my arm, struck me, knocked me down, and got on top of me, and kicked me, and then I pulled my pistol and shot him. Prior to this, about eight or nine days, I helped my brother Pedro Lara, wash some blood off himself, and he said deceased had hit him with a pair of 'brass knucks', and said to him at the same time, 'I have whipped your brother, Cerio Lara; I have whipped you; I am going to beat your brother, Jesus (meaning defendant) and am going to fuck the whole Lara family.'" The court wholly failed in any part of his charge to the jury, in connection with self-defense, to charge on the law of threats. The court erred in not charging upon the law of threats.

Complaint is also made of the following portion of the court's charge: "If you believe from the evidence that defendant, Jesus Lara, killed Juan Rodriquez, by shooting him with a pistol, and you further find that at the time of so doing, Juan Rodriquez had made an attack on him, defendant, in the night time, took hold of him, struck defendant a blow with a piece of iron or any kind of hard substance, which caused him to fall to the ground, and that said Juan Rodriquez then got on top of defendant, and defendant then pulled his pistol and shot and thereby killed deceased, if you so find or if you have a reasonable doubt as to the same, you will acquit defendant." Instead of this

charge, the court should have told the jury that if deceased had threatened the life of defendant, and that at the time deceased met defendant he made a violent assault upon him, and defendant believing his life was in danger or his person in danger of serious bodily injury, slew deceased, then defendant would not be guilty of any offense; or if the jury had a reasonable doubt as to the same, they should acquit defendant. In other words, it was not necessary that the jury should believe each effort to injure defendant was committed by deceased, before defendant's right of self-defense could be availed of.

It is further insisted that the court should have charged on manslaughter. We think this position is correct. Appellant having been previously warned of threats against his person by deceased, suddenly meeting deceased, as the evidence here shows, and being assaulted by him, if his mind was rendered incapable of cool reflection, and he slew deceased under anger or fear, producing sudden passion, and the jury believed he was incapable of cool reflection from an adequate cause, they should have convicted defendant of manslaughter, and the court should have so charged.

Appellant's counsel asked the court for a twenty day order in which to file bill of exceptions and statement of facts after the adjournment of the term. Thereupon the judge proceeded, in open court, as counsel for appellant thought, to enter up said order on his docket. If we did not know what was attempted to be done, we could not tell from the reading of the order as contained in this record, what was intended. But the affidavits filed in this court by counsel for appellant show that he exercised the utmost diligence to ascertain whether said order had been entered by the court, but could not ascertain it prior to the adjournment of the term. Therefore we deem it necessary to consider his statement of facts and bills of exception. Under the present statute, it is only necessary for the court to enter the order on his docket. Formerly it was necessary to place said order upon the minutes of the court. In view of the fact that the affidavits before us show that appellant's counsel exercised the utmost diligence to get said order entered upon the docket, and believing and he had a right to believe, that said order was so entered, we have considered said statement of facts and bills.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*