### KID WILSON v. THE STATE.

#### No. 4111.   Decided June 7, 1916.

**1.—Murder—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence raised that issue, there was no error in submitting the same to the jury.

**2.—Same—Self-defense—Charge of Court—Coupling Conditions.**

Where, upon trial of murder, the court in his charge on self-defense, coupled and joined the conditions under which defendant was entitled to self-defense, which was error, but in the same charge stated the law correctly and favorably to the defendant and instructed the jury that if they believed from the evidence either statement or condition, or had reasonable doubt thereof, to acquit the defendant, there was no reversible error; distinguishing Lara v. State, 48 Texas Crim. Rep., 568.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**4.—Same—Motion for Rehearing—Expressions in Opinion.**

Where, upon motion for rehearing, appellant contended that the court's expression, in the original opinion that deceased and his wife were not living together, etc., was not supported by the record, but the contrary appeared, there was no reversible error.

**5.—Same—Charge of Court—Self-defense—Coupling Conditions.**

Where the court gave a charge on self-defense that would have been reversible error, by coupling all the conditions upon which defendant claimed self-defense, and then in the same charge instructed the jury that if either statement was made or any condition occurred followed by the attack, real or apparent on the part of the deceased, the defendant should be acquitted, there was no reversible error; distinguishing McMillan v. State, 73 Texas Crim. Rep., 343; Dodson v. State, 45 Texas Crim. Rep., 574; Lara v. State, 48 Texas Crim. Rep., 568.

Appeal from the District Court of Uvalde.   Tried below before the Hon. R. H. Burney.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*L. Old* and *Paul R. Ellis,* for appellant.—On question of court's

charge on self-defense: Dodson v. State, 45 Texas Crim. Rep., 574; Lara v. State, 48 id., 568; McMillan v. State, 73 id., 343.

On question of court's expression not warranted by the facts: King v. State, 4 Texas Crim. App., 256; Riles v. State, 106 S. W. Rep., 357.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder and given five years in the penitentiary.

There are no bills of exception in the record except objections to the court's charge. The first exception to the charge is, the court was in error in submitting the issue of murder. We are inclined to believe, under the evidence, the court did not in this matter commit error. A statement, briefly of some of the facts, will show that appellant was a boy seventeen or eighteen years of age, and deceased a man about thirty. The difference in weight was in favor of the deceased by about forty pounds. Deceased and his wife were not living together. The testimony indicates that it is probable that the defendant may have been a contributing cause of their separation. On the night of the trouble Williams and his wife and the wife of deceased were in company on the street walking. Defendant met them, stopped deceased's wife and engaged her in conversation. Just prior to meeting the deceased's wife appellant borrowed a knife from one of the State's witnesses, who testified in this connection: "As we come down the street the defendant asked me to lend him my knife, and I handed it to him right in front of Mr. Pilgreen's house. At that time he and I and Rastus, who was Andrew Gordon, were walking down the street, and after I had let him have the knife, Andrew Gordon and I stopped because I had broken my suspenders and wanted to fix them. When we stopped, defendant, Kid Wilson, walked on, it was after dark, and I could not see him all the way, but we went right behind him. The next time I saw him was when we overtook him; he was standing on the sidewalk talking to Agnes Davis, and I walked by them while they were standing there talking, and right after I passed them I met Henry Davis, and I walked on by a little way, and turned around and watched them, as I expected trouble. I was in sight of them at the time, and Kid Wilson was standing there talking to Henry Davis' wife, and I saw Henry Davis go straight down the sidewalk and go straight towards them, and when he got to where they were they went together and began fighting, and Mrs. Agnes Davis spoke to them, and said, 'You all quit,' and repeated it two or three times. While they were fighting Richard Wilson, who was a brother to Kid, came up to them. He was back down the street behind them with Nettie Grant, and he came up there, and when he got there I saw Richard Wilson push them apart, and then they went back together, and at that time Mrs. Davis had hold of Henry, at least it looked that way to me. About the time that Richard Wilson got there Sol Williams came up, and then imme-

diately after that the third fight took place, that is, they went together the third time, and immediately after they had gone together the third time I heard Henry Davis say, 'Oh, Lordy! I am cut all to pieces,' and about that time I ran off." The knife is described to be "a large bone-handled knife, with a big blade about three inches long, which length of the blade was admitted to be correct by the attorney representing the defendant, and the attorney representing the State." It is also shown by Williams that when he and his wife and deceased's wife, Agnes Davis, met appellant he asked Agnes Davis to stop and talk to him. While talking deceased came up and a fight ensued. It might be further added that the previous witness testified: "Yes, this is the knife I loaned defendant on the street about one hundred and fifty yards from where the fight took place. It is my knife, and at the time that I loaned it to him he did not say what he wanted with it, and there was nothing said about it; he just said, 'Howard, lend me your knife,' and I handed it to him, open. At the time I loaned this knife to Kid Wilson he carried it off in his hand, and it was open at the time I gave it to him, and I never saw him close it up, or put it in his pocket. I never saw any knife or arm at any time on Henry Davis during the fight."

The defendant's theory of the case was that he was talking with the wife of the deceased at the time he came up; that deceased rushed at him, struck him with his fist and broke his glasses, injuring his eye, knocking him down. This was the beginning of the fight. He also testified to some expression of the deceased, who called on his wife for a knife, stating that he expected to "kill the damn black son of a bitch," referring to defendant.

We are of opinion that under this state of facts the court was not in error in submitting the issue of murder to the jury. We think the facts justified the court to so charge.

There is an exception to the charge which should be noticed. It is what is styled in the exception as subdivision or paragraph No. 17 of the court's charge, wherein he applies the law of self-defense to the facts. Numerous cases are cited by appellant to sustain his criticism of the charge. After giving paragraphs Nos. 15 and 16, the usual stereotyped definition of self-defense, the court gave what is styled paragraph No. 17, as follows: "You are further instructed on the law of self-defense as applied to the facts of this case, that if you find from the evidence that the defendant did on or about the time alleged, and with a knife, cut and stab, and thereby kill the said Henry Davis, but you further find that at the time, or just prior to the time that he did so, the said Henry Davis had made an assault upon the defendant and knocked him down, and that thereafterwards in the pursuance of the difficulty between them, if any, the deceased, Henry Davis, called to his wife to give him his knife, and remarked at the same time that 'I will kill the black son-of-a-bitch,' or if he made either of said statements, and thereupon approached the defendant, or made an assault

upon him in the night-time, and that, as viewed from the standpoint
of the defendant at the time, he believed that he was in danger of
serious bodily injury or death at the hands of the said Henry Davis,
from such attack, or threatened attack, if any, and that while so be-
lieving, he pulled his knife and cut and stabbed the said Henry Davis
and thereby killed him, then in case you so find the facts to be, or if
there is a reasonable doubt in your mind that such were the facts, you
will acquit the defendant," etc. Appellant's proposition is that the
coupling of conditions and statements as was done in the first portion
of this charge was error. Had the charge stopped at that point the
case should be reversed, but after stating those he then instructed the
jury that if deceased made either of said statements and approached the
defendant or made an assault upon him in the night-time, they should
give him the benefit of the doubt and acquit him. Several cases are
cited by appellant to sustain his criticism of the charge in regard to
coupling of conditions upon which the jury should base self-defense.
Among those is Lara v. State, 48 Texas Crim. Rep., 568. An examina-
tion of the Lara case discloses the conditions coupled were not alter-
native or in the disjunctive of those conditions. In the instant case
the court, after joining these together and informing the jury if these
matters occurred, defendant would be entitled to an acquittal. Then
to guard against any supposed error, and state the law favorable to
defendant, he instructed them if they believed either statement or con-·
dition, that appellant would be entitled to an acquittal, or if they had
a reasonable doubt thereof they should acquit. We are of opinion that
this charge, while inartistic, gave the benefit to the defendant of the
law of self-defense from the standpoint that if either one of these
statements or conditions existed, or there was a reasonable doubt about
it, he should be acquitted.

It is also insisted that the evidence is not sufficient to justify the
verdict of murder, and that no higher offense than manslaughter is in
the case by the testimony. We have stated enough of the testimony
we think with reference to the charge submitting the issue of murder
to show the jury was justified in finding against appellant's contention
on that proposition. We are of opinion there is no such error in the
record as would require a reversal of the judgment. It is, therefore,
affirmed.

*Affirmed.*

ON REHEARING.

June 23, 1916.

DAVIDSON, Judge.—On a former day of the term the judgment
herein was affirmed. Appellant in his motion for rehearing attacks
the following expression in the original opinion: "Deceased and his
wife were not living together. The testimony indicates that it is
probable that the defendant may have been a contributing cause of

their separation." The motion contends that this statement is not supported by the record. The writer was responsible for the expression in the original opinion, and in the light of the criticism has reviewed the testimony to ascertain if an injustice has been done appellant by reason of the statement

The State's case, through the witness Williams, is to the effect, that he and his wife and the wife of deceased, Agnes Davis, were walking along the street together and met appellant, who stopped Agnes Davis and stated to her he wanted to see her a moment. Witness says he and his wife walked on down the street and met deceased; that he and his wife stopped and turned around and watched deceased go down the street. "Immediately after that I heard someone say something, but could not tell what it was that was said and who said it, and then I heard some blows passed, and then I started back down there, and left my wife standing on the sidewalk. When I got to where they were they were not fighting, but just as I got there they went together again, and I heard Agnes Davis holler for someone to come there, that there was a fight." Just as they were pushed apart by Richard Wilson, brother of defendant, appellant reached for something in his pocket and rushed up to deceased "and made two swipes with his right hand on the left side of Henry Davis, the dead man. He just ran at Henry Davis and struck him, and then the defendant and Richard Wilson, his brother, ran." This witness further says: "Yes, before that time Kid Wilson had told me that he liked Mrs. Agnes Davis, the wife of the deceased, and liked her company because she was so jolly and pleasant." This witness further testified he had not heard of any previous trouble between deceased and defendant. These witnesses seemed to have been impressed with the idea that when deceased approached where appellant and the wife of deceased were engaged in conversation that something was going to happen. The witness further testified: "I had never seen Kid Wilson at Agnes Davis' house since she and her husband had separated; he used to go there while they lived together, but I have never seen him there since they separated." The testimony further shows from another witness: "The next time I saw him was when we overtook him (appellant) and he was standing on the sidewalk talking to Agnes Davis, and I walked by them while they were standing there talking, and right after I passed them I met Henry Davis, and I walked on by a little way and turned around and watched them, as I expected trouble. I was in sight of them at the time, and Kid Wilson was standing there talking to Henry Davis' wife, and I saw Henry Davis go straight down the sidewalk, and go straight towards them, and when he got to where they were they went together and began fighting." The witness further testified: "I heard Henry Davis say: 'Oh, Lordy, I am cut all to pieces,' and about that time I ran off. At the time that I loaned this knife to Kid Wilson he carried it in his hand, and it was open at the time I gave it to him, and I never saw him close it up, or put it in

his pocket. I never saw any knife or arm at any time on Henry Davis during the fight." The defendant himself testified, referring to deceased: "I had never had any trouble before. I had been to his house some, while he and his wife lived together, but was never there except while he was there, and after they separated I never went back any more." The defendant denied being the cause of the separation. Other testimony of a kindred nature might be added to the above. If this does not justify the statement in the original opinion, the writer is still of the opinion that it would be rather difficult to understand what this testimony means. That they were separated is not contested. Every witness who testifies in regard to the matter shows that deceased and his wife were separated. Defendant said there had never been any trouble before this occasion, yet he stopped the wife of deceased on the street, having prepared himself with a large knife beforehand, and deceased evidently anticipating something, approached defendant and his, deceased's, wife, rapidly, and immediately upon reaching them defendant says deceased knocked him down and broke his glasses, then rushed on him again, and he, appellant, stuck his knife in him. We are still of opinion that the statement criticised by counsel found in the original opinion might be intensified and yet be within legitimate deduction from the facts. It is not my purpose to take up the facts and argue and discuss that question further. That every witness who testified in regard to the matter seemed to have anticipated there would be trouble at the time is not to be questioned by this record, and the fact that appellant was talking to deceased's wife, having prepared himself with a large open knife loaned to him by a witness who testifies and whose evidence is quoted in the original opinion, is also not debatable, there having been no other trouble between the parties and no occasion for it, as shown by the testimony of the defendant, and it was before the jury for their consideration. The deduction or conclusion is fully fair that the wife of deceased and deceased's separation from her entered into this case.

I do not care to discuss the court's charge as set forth in the original opinion. The cases relied upon by appellant, Lara v. State, 48 Texas Crim. Rep., 568; Dodson v. State, 45 Texas Crim. Rep., 574, and McMillen v.. State, 73 Texas Crim. Rep., 343, are not in point. Had the court's charge terminated with coupling the conditions as found in the charge and gone no further, those cases would have been in point and required a reversal of this judgment. But the court after giving these conditions in his charge on self-defense, gave the converse of it favorable to the defendant, and instructed the jury that if either of these statements or conditions occurred and deceased made an attack which brought actual or apparent danger to defendant, he had a right to kill. It occurs to us this was favorable to defendant so far as that phase of the charge is concerned. The court gave a full charge on both actual and apparent danger. Having given a charge that would have been reversible by coupling all the conditions, the court then instructed

the jury that if either statement was made or any condition occurred followed by the attack, real or apparent, on the part of deceased, the defendant should be acquitted. It presents the opposite side or the reverse proposition favorably we think to the defendant. The first part of the charge should not have been given, but having given it, the court then instructed the jury favorably to defendant's side of the case. But in any event, the jury was instructed that if either of these matters occurred or any other statement was made by deceased, appellant was entitled to an acquittal, provided it presented to him either actual or apparent danger.

The motion for rehearing, therefore, will be overruled.

*Overruled.*