T. HARRIS, ALIAS AARON MCDANIEL, V. THE STATE.

No. 9566.   Delivered December 9, 1925.

Rehearing denied March 24, 1926.

**1.—Murder—Confession of Accused—Exculpatory Statements—Charge of Court.**

Where on a trial for murder, the state having introduced a confession of appellant, in which he made the statement that he shot the deceased because she was pointing a pistol at him at the time, there was no error in refusing a requested charge by appellant that the state, having introduced the exculpatory statement, and not having refuted it, was bound by same, and that appellant was entitled to an acquittal.

**2.—Same—Continued.**

It has never been held in this state to be the invariable rule, that the refusal of such a charge must be held reversible error, when the admission or confession of the accused are introduced by the state, and contain exculpatory statements. In Jones v. State, 29 Tex. Crim. App. 20, Judge Willson said "We do not wish to be understood as holding in all cases where the admission or confession of a defendant are admitted in evidence against him, that it is necessary to give such or similar instructions to the jury."

**3.—Same—Confession of Accused—Exculpatory Statements—Rule Stated.**

A charge that the state is bound by the exculpatory statements in a confession of the accused, when introduced by the state, is necessary only in cases where the state relies almost. if not entirely upon the confession, to connect the accused with the offense. See Jones v. State, 29 Tex. Crim. App. 20 and Slade v. State, 29 Tex. Crim. App. 381, and other cases cited.

4.—Same—Continued.

The true rule is, that the necessity for such charge is always referable to the facts, and that when the falsity of such exculpatory part of the confession is shown, and especially when the defensive theory based upon such exculpatory fact or facts in the confession is fully submitted in other parts of the charge, the refusal of such charge now under discussion, would not be reversible error. Following Tidwell v. State, 40 Tex. Crim Rep. 41; Pickens v. State, 86 Tex. Crim Rep. 660-661.

ON REHEARING.

4.—Same—Continued.

On rehearing we are constrained to add to our original opinion, that Mr. Branch in Sec. 73 of his Ann P. C. cites many cases supporting the proposition that if the state does not rely for a conviction alone on the confession of the defendant, but introduces evidence in rebuttal of the confession, (as was done in the instant case,) it is not error to refuse to charge that the state is bound by the whole of a confession containing exculpatory statements. Following Pickens v. State, 218 S. W. 755 and Parrish v. State, 97 Tex. Crim. Rep. 63.

Appeal from the Criminal District Court of Harris County. Tried below before the Hon. C. W. Robinson, Judge.

Appeal from a conviction of murder, penalty assessed at death.

The opinion states the case.

*Tom H. Sanders, A. W. Pertle* and *Dan Rosenthal* of Houston, for appellant.

*Sam D. Stinson,* State's Attorney, *Nat Gentry, Jr.,* Assistant State's Attorney, *Horace Soule,* Criminal District Attorney and *J. L. Du Mars,* Assistant District Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Harris County of murder, and his punishment fixed at death.

The facts amply show the guilt of appellant and will not be discussed at any greater length than may be necessary to make plain our conclusion regarding the two bills of exception found in the record.

The first bill of exceptions complains of the refusal of a peremptory instruction for acquittal, and the other of the failure of the court below to give a special charge, both exceptions being based on substantially the same complaint. The confession of appellant was introduced by the state. It is asserted here that same set up self-defense, and that the state having offered it in evidence was bound thereby, and the court

should have instructed a verdict of not guilty, or having refused so to do, he should have given an instruction to the jury that when the state introduces a confession containing exculpatory matter, it is bound by same unless such statements are shown to be untrue. We know of no authority in this state which attempts to lay it down as an invariable rule that the refusal of such a charge must be held reversible error when the admissions or confessions of accused are introduced by the state and contain exculpatory statements. To so hold would be manifestly wrong. In Jones v. State, 29 Tex. Crim. App. 20, Judge Willson, writing for the court, said: "We do not wish to be understood as holding that in all cases where the admissions or confessions of a defendant are admitted in evidence against him, that it is necessary to give such or a similar instruction to the jury." In Slade v. State, p. 381 of the same volume of our reports, Judge Hurt held this to be necessary only in cases where the state relied almost, if not entirely, upon the confession to connect the accused with the offense. This general principle has been adhered to by the court in Loan v. State, 69 Tex. Crim. Rep. 222; Cook v. State, 71 Tex. Crim. Rep. 535; Pickens v. State, 86 Tex. Crim. Rep. 660, a case which reviews the authorities and lays down the rule now under discussion. Also Forrester v. State, 248 S. W. Rep. 40; Simpson v. State, 97 Tex. Crim Rep. 63. The same general doctrine is announced in Casey v. State, 54 Tex. Crim. Rep. 587 in an opinion by Judge Davidson. In Aven's case, 95 Texas Crim. Rep. 160, and Bennett's case, 95 Tex. Crim. Rep. 427, in discussing an analogous question as to the necessity for a charge that the confession of the accused must be corroborated before same will suffice to establish the corpus delicti, we held the refusal of such charge not error when the record plainly showed by other testimony, than the confession, proof of such corpus delicti.

The true rule is that the necessity for such charge is always referable to the facts, and that when the falsity of such exculpatory part of the confession is shown,—and especially when the defensive theory based on such exculpatory fact or facts in the confession is fully submitted in other parts of the charge, the refusal of a charge similar to the one under discussion would not be reversible error. Tidwell v. State, 40 Tex. Crim. Rep. 41; Pickens v. State, 86 Tex. Crim. Rep. 660-661.

In the case before us appellant was shown to have worked at the camp of Mr. McKinney and Mr. Stokeley, deceased being the cook at said camp. It was also shown that he had had

trouble with her and had threatened to kill her. On the Sunday after the homicide Mr. Stokeley went to a camp where appellant was then working, announcing as the purpose of his visit that he was looking for some mules. It was in proof that when appellant saw Stokeley, he hid in a tent and told persons that Stokeley was not looking for mules,—he was looking for him, appellant,—that he had killed that woman. It was also further testified that as soon as Stokeley left said camp appellant fled into some timber and did not return to said camp. It was also shown that appellant had a 32-20 pistol, and that on Wednesday after this killing on Monday, he went to the camp of one Pistol Pete looking for work, and there told a witness that a person shot with a 32-20 pistol did not get over it, they bled inside. He also showed witness a cartridge such as he used in his said pistol. The floor of the tent of deceased was of wood, and after she was killed a bullet hole was found in this floor about two feet from the flap of the tent. It was in testimony that a hole was in the wall of the tent, and that in the tent after the killing a stool was found near a table and by said stool were the shoes and one stocking of deceased. When found just outside of the tent she was dead and had only one stocking on. In line from the hole past the stool and about twelve feet from the tent another bullet was discovered and dug up after the shooting. The bullet found in the floor and the one dug up out of the ground just outside the tent were identical and were steel jacketed bullets of 32-20 size. Appellant in his confession said that he went to McKinney's camp on Monday to see one Frenchy but did not get there until the boys had gone to work; that he called "Hello" and no one answered, and he then went to the dining tent door and hollered again and that deceased came to the door of her tent and asked him what he wanted there. He said nothing. She turned back into her tent and came back to its door with a pistol and pointed it at him and he said he came up with his pistol and shot one time at her and turned and walked off; that she did not fall but was standing there when he saw her last. He also said that he went to work for Pistol Pete and that when Stokeley came to Pete's camp he quit; that he told Pete he had to quit; that he had gone to Stokeley's camp to see a boy and that "she grabbed a gun" and he shot her first. He further said that he had nothing against the woman and would not have done anything to her if she had not grabbed the gun and "throwed it down on me to shoot me. I don't know any reason she had to do that. I was not within twenty feet of her at that time."

As affecting the truth of the exculpatory matters, it was shown that deceased kept in her tent one pistol which belonged to Mr. McKinney; that after her death search was made of the tent and said pistol was found under some clothes in a trunk which was locked and the key of which was in the possession of the husband of deceased who had gone to his work early that morning. The testimony above recited showing that two shots were fired, one of which took effect in the floor of the tent and the other in the ground just outside the tent and that same were in line with the hole in the back of the tent and the stool where circumstances indicated deceased was pulling off her shoes and stockings, and also the fact that some blood was found on the corner of the tent, and that deceased was shot one time, the bullet going through her body, and that neither bullet was found where it could have gone, had this been true,—all seem to us to abundantly show the falsity of the exculpatory claim of self-defense on the part of the appellant. In addition to what has just been said we note, as in the Tidwell and Pickens cases, supra, the learned trial judge in this case instructed the jury fully on the law of self-defense, same being the only defensive theory suggested by the exculpatory part of said confession.

Under the authorities above cited and under the rules holding that where the defensive theory contained in the exculpatory statements is fully submitted in the charge, and that such refusal of such charge is not reversible error if the other evidence in the case establishes the falsity of the exculpatory matters in the confession, we are of opinion that no reversible error appears. We have refrained from a discussion of certain defects in the special charge asked, in view of the fact that appellant received the extreme penalty in this case, and have discussed it as though the refused charge was correctly drawn.

Being of opinion that the trial judge did not err in refusing said special charge, and that the evidence fully justified the jury's verdict, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We seem not to have made ourselves clear in the original opinion on the point that it is not necessary in all cases where the state introduces a confession which contains exculpatory statements, for the court to charge in so many words that unless such exculpatory statements have

been shown to be untrue, the accused must be acquitted. Mr. Branch in Sec. 73 of his Annotated P. C. cites many cases supporting the proposition that if the state does not rely for a conviction alone upon the admissions or confessions of the defendant, but introduces evidence in rebuttal of the confessions or admissions, it is not error to refuse to charge that the state is bound by the whole of a confession containing exculpatory statements. To the same effect are the more recent decisions of Pickens v. State, 218 S. W. Rep. 755, and Parrish v. State, 97 Tex. Crim. Rep. 63. In the case before us the proof showed the killing on Monday at the camp of a Mr. Stokeley where appellant had formerly worked, and from which he had been discharged because of information of his misconduct given by deceased in reference to whom eh said after his discharge—that he ought to take a knife and cut her G—d d—n throat. On Sunday after the killing Mr. Stokeley, looking for some mules, and without knowledge of appellant's presence there, went to another camp where appellant had gotton work after this homicide. Appellant saw Stokeley and ran into a tent and hid, saying that Stokeley was not looking for mules but was looking for him,—that he had killed that woman. He said, "I got to go because I killed that woman down there." He was nervous and left the camp in a few moments and headed out into the woods. He kept looking back until he got out of sight. He did not return to the camp. The deceased was shot with a 32.20 bullet and it was shown that appellant was in possession of such pistol the day after she was shot. These facts with others in the record show that the state was not relying solely on appellant's confession to connect him with the killing.

But, it may be said, while these facts show, independent of the confession, appellant's animosity and motive as well that he killed the woman, still they are not enough to meet and overcome the exculpatory statements that he killed her, as stated in the confession, because she pointed a pistol at him. Let us reason further. If the woman had in fact pointed the pistol at appellant and this caused him to believe himself in danger, defending against which he shot her,—the killing would be in self-defense. That part of the confession referred to as exculpatory states that he shot the woman after she pointed a pistol at him, and this raises no issue save that of self-defense. No other testimony is found in the record suggesting the issue of self-defense. As stated in our former opinion, the law of self-defense was fully and explicity given in the charge of the court. In the Pickens case, supra, the

exact point here involved was fully discussed. From the syllabus in that case we quote:

"In murder prosecution, where state did not rely upon evidence of defendant's admission to show that defendant had killed deceased, there being other circumstances to connect defendant with the killing, and court instructed jury on law of self-defense on apparent danger and threats and gave specific instruction covering the defense's theory suggested in the exculpatory statements connected with the admission introduced by the state, court's refusal to instruct that burden was upon the state to disprove exculpatory statements contained in such admission excusing homicide on grounds of self-defense, held not error."

The effect of the charge on self-defense, which theory, as above stated, rests solely on the exculpatory statements in the confession, was to bring the jury directly to a decision as to their belief of the truth or falsity of this exculpatory part of said confession. The accused thus got all the benefit which would have accrued had the court given the charge here contended for. We are not allowed to reverse cases for complaints directed at matters in the charge of the court, unless same be of such serious import as to lead the court to some belief of injury to the accused.

Believing that the law was fully charged and that no injury was possible to appellant in the matter complained of, the motion for rehearing is overruled.

*Overruled.*