Nelson **CHEVALLIER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 37480.

Court of Criminal Appeals of Texas.

Feb. 10, 1965.

Rehearing Denied April 21, 1965.

Certiorari Denied June 20, 1966.

See 86 S.Ct. 1933.

Will Gray, Houston, for appellant.

Frank Briscoe, Dist. Atty., Gus J. Zgourides and Daniel P. Ryan, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

DICE, Commissioner.

The conviction is for murder; the punishment, death.

The indictment charged that the appellant "did with malice aforethought kill Castina Nelson by pouring caustic soda, commonly known as lye, in her mouth and down her throat."

The state's evidence shows that appellant and the deceased, Castina Nelson, though not legally married, lived together as husband and wife.

During the early morning hours of January 21, 1964, the deceased came to the door of a neighbor's house in her nightgown and with blood oozing from her mouth. The deceased, being unable to talk and having the appearance of being burned about the face and mouth, was taken to a hospital in an ambulance and died some ten days later.

When examined at the hospital by Dr. V. F. Mersol, the deceased had burns over her face, scalp, and shoulder, burns in the mouth, tongue, and pharynx, and, in addition, a stab wound in the neck. The burns found on the body were described by the doctor as being "compatible with someone taking caustic soda, lye, and pouring it into the mouth and down the throat of a person."

An autopsy performed upon the body of the deceased by Dr. Robert Bucklin revealed that the cause of death of the deceased was pneumonia resulting from chemical burns to the tongue, mouth, throat, respiratory tract, gastro-intestinal tract, and lungs. It was shown by the testimony of Dr. Bucklin, also, that the burns to the mouth, lips, tongue, and respiratory tract of the deceased were "compatible with burns left by some substance such as caustic soda," also known as lye.

It was further shown that before the deceased was taken to the hospital, certain city officers came to the neighbor's house and then proceeded to the residence of appellant and the deceased. When they entered the house, the officers detected a strong odor of gas and discovered a gas hose pulled away from a connection in the living room and the gas turned on. Upon entering the back bedroom, the officers found it very much disarranged and the gas on in that room. Two other gas jets, one in the bathroom and the other in a front bedroom, were found open. In the bathroom the officers found blood, hair, and dirty clothes on the floor. There were also smears of blood on the bathtub and on the windowsill of a partially opened window. The officers also found in the bathroom a knife with blood stains on it and found a can on top of a shelf. A piece of electric wire which appeared to have been cut from an extension cord was found in a front bedroom.

While the officers were in the house the telephone rang and a person whose voice was identified as appellant's talked to one of the officers. In the conversation appellant stated: " 'I guess you all are looking for me. * * * I'm Nelson Chevallier,' " and when asked what happened appellant told the officers that he and his wife had a

fight, that he slapped her and cut her with a knife. Appellant stated that he then turned on the gas, disconnected the hoses to the heaters and poured lye on his wife. In the conversation, appellant gave the officers the address where he could be located.

Subsequent to the conversation, appellant was taken into custody at the address given and, following his arrest and after being duly warned, made and signed a written statement in which he admitted committing the acts of violence upon his wife which caused her death.

In his confession appellant stated, in part, as follows:

"Tonight about 1:30 or twenty till two I Got up from the front bedroom, where I had been sleeping, and went to the kitchen and got me some water. After I got me a drink I went into Castinas bedroom on the way to the bathroom. Castena was asleep in the back bedroom. She started sleeping in the back bedroom since Sunday night. We had a argument Sunday because Castina brought up a woman that I used to go with in New Orleans. Since this she has been sleeping in the back bedroom and I have been sleeping in the front bedroom. After I went thru Castinas bedroom and into the bathroom I turned on the light in the bathroom and that woke Castina up. When she woke up she started in on me telling me that I could'nt sleep because I was thinking about Jesse, the woman that I used to go with in New Orleans. When she said this I picked up a piece of extention cord that was in the bathroom and went into her bedroom and hit her with it. I told her that she was always bringing that up and I told her that I had told her before that stuff like that is going to get you killed. Then me and her went to tussling. Then she promised me that she would'nt say that any more. Then I knocked her down in the bathroom door [sic] and she still had a hold of me. Then I grabbed my knife off of the shelf in the bathroom and stabbed her in

the neck, I'm not sure how many times I stabbed her but I know that I stabbed her once for sure. Then I set down on the side of the bathtub and I saw that she was still bleeding and suffering and I told her I might as well go ahead and finish you off because I haven't ever had nothing but trouble out of you. I told her that she just wanted to use me. She did'nt answer me. Then I went to the kitchen and got some lye and made some lye water. I put two spoonfuls of lye into about a third of a glass of water and went back into the bathroom and poured it on her mouth. After this I went into the front bedroom and set on the bed and thought. After I thought for a few minutes I thought to myself 'Well by the time that they find you you'l be dead'. Then I got up and went into the living room and took the hose off of the heater and turned on the gas. Then I went to the backbedroom and turned on the gas jet. There is no heater in the backbed room so I did'nt have to do any disconnecting. Then I went thru the bathroom. I don't remember if I turned on the gas in the bathroom or not. I do remember that the heater in the bathroom was turned over while we were scuffling. After I turned on the gas I went in my bedroom and put on my clothes. During the fight I had on my pajamas, and went into the living room and set down for about five minutes thinking. I thought well they'l find her so I had better try to get away. * * * I then went to my Aunt's phone and called back to the house on Alabama and talked to the officers. At first I told the officer that I was at Lyons Avenue and Dan St. I told the Officer that he could pick me up there if they wanted me. While I was talking on the phone my Aunt heard me and started crying. I then asked my uncle what the address was and he told me 1813 Dan St. I then told the officer that I was talking to that I would be waiting for them and that I would turn the light on. After a short wait I saw a police car pull up in

front of the house. I opened the door and told the officers that I was coming. I got me a drink of water and left the house and met the officers."

It was further shown that an analysis made by Chemist Robert F. Crawford of the substance in the can found in the bathroom of appellant's residence revealed that the can contained sodium hydroxide, which the chemist testified is also known as caustic soda and commonly known as lye. Chemist Crawford testified that two spoonsful of lye in a third of a glass of water would be poisonous and capable of producing death.

Appellant's defense was that of insanity and in support thereof he called as witnesses, Dr. A. H. Vogt, a psychiatrist, and Charles P. Woodruff, a public school teacher, both of whom expressed the opinion that appellant was a mental defective who did not realize the nature and quality of his acts.

The state joined issue by calling as witnesses, Dr. David J. Wright, Jr., a psychologist, and Dr. Benjamin Sher, a psychiatrist, both of whom expressed the opinion that appellant was of sound mind and capable of understanding the difference between right and wrong and the nature and consequences of his acts. Lay witnesses were also called by the state who expressed the opinion that appellant was of sound mind.

The court, in his charge, submitted to the jury appellant's defense of insanity and also the defense of accident.

The jury, in their verdict finding appellant guilty of the offense charged, also found him to have been sane at the time the offense was committed and at the time of trial.

■ The evidence is amply sufficient to support the verdict and the punishment assessed.

■ We overrule appellant's contention that the court erred in denying his motion to quash the indictment, in which it was urged that the indictment was fatally defective in failing to charge him with murder by poisoning, under Arts. 1197–1199 of Vernon's Ann.Penal Code.

The indictment, as drawn, charges appellant with murder under the general murder statute, Art. 1256, V.A.P.C. While the indictment could have been drawn charging murder under the provisions of Arts. 1197–1199, supra, the state had the right to prosecute appellant under the general murder statute, Art. 1256, supra. Alvarez v. State, 109 Tex.Cr.R. 62, 2 S.W.2d 849; Cooper v. State, 171 Tex.Cr.R. 412, 351 S.W.2d 235.

We also overrule appellant's contention that the court erred in failing to instruct the jury that before convicting him they must find from the evidence beyond a reasonable doubt that he had the specific intent to kill the deceased.

■ As heretofore mentioned, the indictment was not drawn under Arts. 1197–1199, supra. An instruction on specific intent to kill or injure was not required in submitting the case under Art. 1256, supra, in view of the uncontradicted evidence showing appellant's intent to kill the deceased. Furthermore, the court's charge on accident was inclusive of any question of intent to kill. Cole v. State, 157 Tex.Cr.R. 469, 250 S.W.2d 201.

■ Appellant insists that the court erred in permitting the state to offer testimony by the witness Evelyn Levy that two days before the killing the deceased delivered some insurance policies to her and that at such time the deceased was "upset" and told the witness to deliver the policies to Adelene Hebert, a sister of the deceased, over the objection that such testimony was hearsay. The same objection was made to the testimony of the witness, Adelene Hebert, when she stated that she received the deceased's life insurance policies from Evelyn Levy.

The record reflects that the court sustained appellant's objection to any testimony of the witness with reference to what the

deceased said but overruled the objection to any testimony with reference to what the deceased did, and instructed the jury not to consider the answer of the witness when she stated the deceased was upset. The only testimony actually admitted by the court over appellant's objection was that the deceased delivered some insurance papers to Evelyn Levy with instructions that they be delivered to someone, and that they were later delivered to the deceased's sister, Adelene Hebert. Such actions on the part of the deceased and the witnesses would not come within the hearsay rule, with the exception of that portion of the the testimony that the deceased told the witness Levy to give the policies *to someone*. We perceive no reversible error in the court's ruling and in the admission of such testimony.

The contention is urged that the state failed to discharge its burden of proving the allegation of the indictment that the means and instrumentality used in killing the deceased was "caustic soda, commonly known as lye." It is also contended that the court erred in admitting the can of lye in evidence, as state's exhibit #8, and the testimony showing the results of an analysis of its contents because the can was not properly identified as the one removed from the bathroom of appellant's home.

State's exhibit #8 was identified by Officer Dudley as the can he found in appellant's bathroom and which he turned over to Officer Muckleroy. Officer Muckleroy identified the exhibit as the can he recovered from the scene and testified that he, personally, took the exhibit to the office of the city chemist and toxicologist and delivered it to Chemist McDonald.

Robert F. Crawford, employed by the city of Houston as a chemist and toxicologist, testified that he examined the substance in the can (state's exhibit #8) and determined that the can contained sodium hydroxide, which is also known as caustic soda, commonly known as lye. Under the evidence, the can was sufficiently identified

as the one taken from the appellant's residence and the content thereof was shown to be caustic soda commonly known as lye, as alleged in the indictment. We are unable to agree that because it was shown that "caustic soda" is a "caustic alkali" the evidence is insufficient to support the allegation of the indictment or that the court erred in refusing to give certain instructions requested by appellant with reference to the means used in causing the death of the deceased.

Error is urged by appellant to certain comments made by the court during the trial.

The first comment was made while Officer Hutchens was testifying on direct examination that the person with whom he had the telephone conversation at the scene was the appellant. When an objection was made by appellant that there was no showing that the witness knew it was the appellant with whom he was talking, the court stated: "There's no showing it wasn't [sic]. He said he did." Upon objection to the court's comment, the court told the jury: "The jury will not consider any remark of the Court for any purpose," and overruled appellant's objection and motion for mistrial.

In view of the court's instruction to the jury, we find no reversible error.

The other comment of which appellant complains occurred during jury argument.

An examination of the record reflects that appellant made no objection to the court's comment. Hence, his complaint is not before us for review.

Appellant complains that the court failed to properly instruct the jury on the law of accident and mistake and apply the law to the facts.

On the question of accident and mistake, the judge instructed the jury as follows:

"No act done by accident or mistake is an offense. Now, therefore, if you

believe or have a reasonable doubt thereof that the Defendant, through accident or mistake, poured lye water into the deceased's mouth, you will acquit the Defendant."

The instruction amply protected the rights of appellant upon such issue.

 Appellant's remaining contentions are that he was deprived of due process of law under the Fourteenth Amendment to the Constitution of the United States because he was denied a fair hearing and determination on the issue of the voluntariness of his alleged confession, as required by the decision of the Supreme Court of the United States in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 908; and that he was denied his rights under the Fifth Amendment to the Constitution of the United States and compelled to give evidence against himself and was denied his rights, under the Sixth Amendment to the Constitution of the · United States, to the assistance of counsel, contrary to the standards applicable under the decision in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

We have carefully reviewed the record and find that it does not support the contentions urged by appellant.

The record reflects that when the confession was offered by the state, the jury was retired and a hearing was conducted by the court upon the admissibility of the same.

At the hearing, appellant did not question the proof offered by the state as to the voluntary nature of the confession.

Officer C. J. Lofland testified that after giving appellant the legal warning he took the statement from him; that the statement was then reduced to writing and after being read to appellant by Officer Thornton appellant signed it.

The only question raised by appellant at the hearing was whether certain initials, "N. CH," at the bottom of page one of the confession were his, and the only objection made to the confession was that it had not been shown that the initials were those of appellant and that he had "affirmed" page one of the statement. Such objection was by the court overruled.

Under the record, the court did not err in admitting the confession in evidence, and Jackson v. Denno, supra, has no application.

There is nothing in the record to support appellant's contention that he was denied the assistance of counsel, as was done in Escobedo v. U. S., supra.

The judgment is affirmed.

Opinion approved ·by the Court.