**Walter Joe COLEMAN aka Mike Garon, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61979.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 22, 1982.

Fred Davis, Bryan, Robert T. Baskett, Dallas, for appellant.

Travis B. Bryan, III, Dist. Atty., Jim James, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of murder. The punishment is imprisonment for fifty years.

The appellant asserts: (1) his written confession was improperly admitted in evidence; (2) exculpatory evidence was suppressed; (3) the court erroneously refused to instruct the jury on specific intent to kill; (4) the court erroneously refused to instruct the jury that the State was bound by exculpatory statements of the appellant it introduced unless disproved; (5) the exculpatory statements were not disproved; (6) the prosecutor made improper jury argument.

In two grounds of error the appellant complains that his written confession was involuntary and was obtained as the result of an unlawful arrest and detention. At trial the court held that the arrest warrant was invalid but that appellant's confession was voluntary and was admissible. The appellant argues that under the holding of *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) the confession should not have been admitted in evidence.

In hearing outside the presence of the jury Officer Yeager of the College Station Police Department testified that at approximately 1:00 a.m. of January 14, 1978, he went to the appellant's residence and placed the appellant under arrest. The appellant was handed the warrant which he read. He was then given his *Miranda* warnings. On the way to the police station the appellant started to cry and asked if they found the body. Yeager asked appellant to remain quiet and wait to talk about it at the police station. The rest of the way he sobbed and said, "I didn't want to do it" or "he made me do it." Once at the police station the appellant related a story about how "Richard" had killed the deceased. Yeager asked the appellant if he could show the police where the victim and the murder weapon were located. The appellant said yes and he and other officers went to a location along the Navasota River. The weapon was found but the body was not found until later. The appellant stated it was the gun. They returned to the police station and along the way the appellant started to explain what happened. Yeager asked him if he would like to make a written statement. Once at the police station the appellant was again read his warning. He then gave a statement admitting that he shot the deceased. He read over the statement and signed it. The taking of the statement began at 4:23 a.m. and concluded at 6:55 a.m.

The trial court concluded the affidavit that was presented in support of the arrest warrant was insufficient and therefore the arrest was unlawful. The court ruled that certain items seized at the time of the appellant's arrest were inadmissible but concluded the confession was voluntary and admissible.

In the case at bar the appellant was repeatedly given the *Miranda* warning and he acknowledged that he understood his rights. No evidence of threats or promises was presented. There is ample evidence to support the trial court's conclusion that the appellant's confession was voluntary and we will not disturb its finding. *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1980).

However, having determined that the statement was voluntarily given does not end our inquiry. As the Supreme Court stated in *Brown v. Illinois*, supra:

"Thus, even if the statements in this case were found to be voluntary under

the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [371 U.S. 471 at 486, 83 S.Ct. 407 at 416, 9 L.Ed.2d 441]. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment."

In determining whether or not a confession was the result of an unlawful arrest and detention the court identified the following factors which should be considered:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and particularly

(4) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois,* supra; *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1978); *Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

█ In the case at bar the appellant had been given the *Miranda* warnings several times before he actually made his statement. He indicated he understood his rights and waived them. The time period from the arrest until the confession was completed was only about five hours. The only intervening circumstance was the search for the body and weapon. However, in contrast with *Brown, Dunaway,* and *Taylor* the police officers in the case at bar had probable cause to arrest the appellant and they were not engaged in purposeful and flagrant official misconduct. Indeed, Officer Yeager interviewed and obtained written statements from various witnesses which he presented before the judge who issued the warrant. The officer also informed the judge about his own observation of the deceased's automobile and what another witness had told him. When the officer made the arrest probable cause existed and he arrested the appellant pursuant to what he believed to be a valid arrest warrant. Additionally, the appellant's initial remarks and other statements were not initiated through interrogation but were spontaneous remarks by the appellant. Finally, as we stated earlier the appellant's confession was voluntarily given. We conclude that the confession was not obtained as a result of his unlawful detention.

The appellant argues that a police officer purposefully failed to give appellant's counsel information as to who was the previous owner of the murder weapon. By so doing, the appellant argues, the defense was misled and harmed. However, we note that Charles Kornegay testified without objection that he sold the appellant the pistol two days before the killing. Indeed, it appears that the prosecutor had completed his examination of the witness before appellant offered any objection. Nothing is presented for review.

█ Nonetheless, we have reviewed appellant's contention and conclude that no error occurred. Appellant's counsel met with Officer Yeager prior to trial to examine the physical evidence of the case. Counsel questioned Yeager as to the ownership of the murder weapon. Yeager told him the only evidence of ownership was traced to a retailer in Texarkana. Yeager admitted that at the time he knew that Kornegay had sold the weapon to appellant; nevertheless, the appellant has failed to establish the suppression of exculpatory evidence. Kornegay's testimony was "incriminating and the appellant has not shown that he would have gained any exculpatory benefits in the trial of the case from pretrial discovery." *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980), cert. denied 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Furthermore, the appellant has failed to demonstrate that these facts were not already known to him or his counsel. *Harris v. State,* 453 S.W.2d 838 (Tex.Cr. App.1970). Finally, the appellant did not request a postponement or continuance on the basis of surprise, but rather moved to have the testimony stricken and the jury

instructed to disregard. The ground of error is overruled.

■ The appellant also asserts that it was error for the trial court not to charge the jury on the law of specific intent to kill. The appellant did not testify, but in his confession he said he used the pistol as a club when it fired and killed the deceased. The appellant argues that this evidence raises the issue as to whether the appellant had the specific intent to kill. See *Hargrove v. State,* 501 S.W.2d 878 (Tex.Cr.App. 1973). However, the jury was instructed on the law concerning accident. It has been held that a charge on accident is inclusive of the question of intent to kill and a charge on intent to kill is then unnecessary; the appellant's rights were adequately protected by the instructions given. *Cain v. State,* 549 S.W.2d 707 (Tex.Cr.App.1977); *Chevallier v. State,* 404 S.W.2d 36 (Tex.Cr. App.1965); *Cole v. State,* 250 S.W.2d 201 (Tex.Cr.App.1952). The ground of error is overruled.

The appellant contends that the trial court erred when it denied a request to instruct the jury on the law that exculpatory statements introduced by the State must be disproved. He also asserts that the evidence is insufficient to disprove the exculpatory statements.

During the trial the State presented in evidence appellant's entire confession. The appellant admitted he accidentally killed the deceased after the deceased had made homosexual advances. The confession stated in part:

"Before we reached the river Larry handed me a key and asked me to open the glovebox and hand him the gun.

". . . .

"We got to the river and parked and both got out of the car and walked over to the river bank.

". . . .

"Larry stepped toward me and reached for my shoulder again, I swung around with my arm hitting the gun knocking it out of his hand to the ground and we both reached for it. I was bending over and had had picked up the gun in my lefthand and Larry grabbed my ass with both his hands. This startled me, I hollered damn it Larry and swung around to my left trying to hit him with the pistol. I felt the pistol barrel hit his head and it fired."

The appellant was later arrested and he admitted he was present with "Richard" when the deceased, Lawrence T. (Larry) Baugh was killed. He then led the police to the location of the body and the murder weapon. He later gave his written confession.

Charles Kornegay, one of the appellant's co-workers, testified that he sold a pistol to the appellant on January 10. The appellant told him "this guy, he screwed me; he screwed me the worst kind of way."

Another of appellant's co-workers testified, "he had some stuff to get straight with this guy, that he got messed around in the worst kind of way." Appellant further told him that he would be hearing or reading about it.

At about 5:00 p.m. on January 12, the appellant was seen with Baugh at Baugh's residence. At approximately 7:00 p.m. the appellant called Kornegay and said, "I really did it," and "You'll read about it in the paper." He then asked Kornegay for a ride and Kornegay agreed. They met and appellant repeated himself and then said he "did away with this dude." He added that the person did not even know he had a gun and "I walked up and shot him right between the eyes."

A friend of appellant's testified that at 10:30 or 11:00 p.m. on the same night he talked with the appellant. The appellant told him that he and Baugh had fought. He said he kicked Baugh in the neck and killed him. He dumped the body in the river. He showed the friend the deceased's keys. The appellant asked him to help burn Baugh's car because his fingerprints were on it.

On January 13 the appellant told his girlfriend that Larry and "Richard" had been at his apartment arguing. Richard hit Larry in the face with a gun but they later left together. He told her he was afraid Richard killed Larry.

■ Generally, when the prosecution introduces an exculpatory statement or confession of a defendant it is incumbent upon the trial court on request to instruct the jury that the exculpatory statements are regarded as true unless disproved. *Palafox v. State,* 608 S.W.2d 177 (Tex.Cr.App.1979); *Glover v. State,* 566 S.W.2d 636 (Tex.Cr. App.1978); *Bonner v. State,* 426 S.W.2d 869 (Tex.Cr.App.1968). However, there are several exceptions to this general rule. The rule and one of the exceptions is well stated in 1 Branch's Penal Code, 2d ed. 104, Section 95, as follows:

" 'Where the defendant does not testify in the case, and where the state in developing its case in chief introduces in connection with a confession or admission of the defendant an exculpatory statement which if true would entitle him to an acquittal, the jury should be told that he is entitled to a verdict of not guilty unless such exculpatory statement has been disproved or shown to be false by other evidence in the case.' *Otts v. State,* 135 Crim. [Tex.Cr.R.] 28, 116 SW2d 1084, 116 ALR 1454. (The foregoing rule, after a review of many cases, was stated in 1938 as a safe guide to follow in cases in which the defendant did not testify. It was not intended to be 'an invariable rule,' and is not in complete harmony with *Dixon v. State,* 128 Crim [Tex.Cr.R.] 584, 83 SW2d 328, which is an exception. The above rule could hardly be intended to apply (and it would be impractical if not impossible to apply it) in a case where there were many conflicting statements which were introduced by the state to show the defendant's guilt. *Dixon v. State,* 128 Crim [Tex.Cr.R.] 584, 83 SW2d 328; *Gragg v. State,* 148 Crim [Tex.Cr.R.] 267, 186 SW2d 243. In such an event it should not be necessary to charge on exculpatory statements, not only because of the patent foolishness involved but also because each conflicting statement would disprove the previous one; and moreover such false and conflicting statements under such circumstances become cogent evidence of the defendant's guilt. *Kugadt v. State,* 38 Crim [Tex.Cr.R.] 681, 44 SW 989; Underhill's Criminal Evidence (4th ed.) p 468, § 252; Burrill on Circumstantial Evidence, part a, ch 1, p 491.)"

■ The appellant made several inconsistent exculpatory statements, which were self-contradictory and destructive of each other; it was therefore unnecessary to give the jury instructions urged by the appellant. The statement offered by the State on which the appellant relies for the charge raised the defense of accident. The court did give a charge on that issue.

In cases where the exculpatory statements present a specific defense which comes from no other sources, and such defensive theory is submitted to the jury for decision in an appropriate charge, it has been held that an additional charge to the effect that the exculpatory statement must be disproved is not required. *Dixon v. State,* 128 Tex.Cr.R. 584, 83 S.W.2d 328 (1935); *Harris v. State,* 103 Tex.Cr.R. 479, 281 S.W. 206 (1925); *Bradley v. State,* 107 Tex.Cr.R. 435, 295 S.W. 606 (1927); *Baker v. State,* 130 Tex.Cr.R. 649, 95 S.W.2d 401 (1936). The trial court properly refused to submit the requested charge and the appellant's statement did not entitle him to an acquittal.

■ Although not considered in the briefs by the parties, there appears to be another reason why it was unnecessary to give the requested charge concerning the State being bound by exculpatory statements. When a statement is wholly exculpatory there is no need to give the requested charge. *Trevenio v. State,* 48 Tex.Cr.R. 207, 87 S.W. 1162 (1905); *Dixon v. State,* supra; *Hays v. State,* 129 Tex.Cr.R. 156, 84 S.W.2d 1008 (1935). The appellant's written statement is wholly exculpatory as the only version of the facts in the statement is that the shooting was accidental.

■ In the remaining ground of error the appellant contends that the prosecutor made improper jury argument during the guilt-innocence phase of the trial by commenting on the appellant's failure to testify. Before the prosecutor's argument about which the appellant complains, appellant's counsel argued:

"There are certain doubts about what happened at the river because there's only one person here to tell you about it. It could very well be, and this is a possibility that I draw as a reasonable deduction from the evidence, that you could believe in its entirety the State's case; that Walter Joe Coleman set out to and did, in fact, murder Larry Baugh for money, and still find him not guilty, because neither you nor I know exactly what happened at the river."

Thereafter, the prosecutor argued:

"And they bring out to you those things about look at the little discrepancies in the evidence here, look at the little discrepancy in the evidence there. Well, as I pointed out to you, there are two people that were down there."

The appellant objected but was overruled. The prosecutor continued:

"As Mr. Davis [Defense Counsel] himself told you, there were two people down there and we'll never know what happened because one of them—and I want you to remember this; we'll talk about it later on—there's one of them right now."

Defense counsel's objection was again overruled. The appellant in his brief admits the last remark of the prosecutor, "there's one of them right now" could have been a reference to the picture of the deceased. The argument made by defense counsel was more forceful than the prosecutor's calling the jury's attention to the appellant's failure to testify. The appellant, having first brought the matter of appellant's failure to testify to the jury's attention, cannot complain of the prosecutor's argument. *Meador v. State,* 113 Tex.Cr.R. 357, 23 S.W.2d 382 (Tex.Cr.App.1930); *Parker v. State,* 39 Tex.Cr.R. 262, 45 S.W. 812 (1898); *Gaskin v.*

*State,* 119 Tex.Cr.R. 223, 46 S.W.2d 975 (1932); *Garcia v. State,* 126 Tex.Cr.R. 208, 70 S.W.2d 996 (1934); *Spencer v. State,* 154 Tex.Cr.R. 427, 227 S.W.2d 552 (1950); *Slater v. State,* 166 Tex.Cr.R. 606, 317 S.W.2d 203 (1958). Cf. *Franks v. State,* 574 S.W.2d 124 (Tex.Cr.App.1978).

The judgment is affirmed.

W.C. DAVIS, J., not participating

CLINTON, Judge, concurring in part/dissenting in part.

The majority's treatment of appellant's sixth ground of error[1] seems to reject the contention because "the police officer ... had probable cause to arrest the appellant ... pursuant to what he believed to be a valid arrest warrant." While I agree that the existence of probable cause and the procurement in good faith of an arrest warrant are highly probative of "the purpose and flagrancy of the official misconduct," the issue does not turn on this consideration alone; indeed, the Court has rejected application of a "good faith exception" in cases such as this. See *Green v. State,* 615 S.W.2d 600 (Tex.Cr.App.1981) (Opinion Dissenting to Denial of State's Motion for Leave to File Motion for Rehearing Without Written Opinion).[2] But, the majority has placed virtually all emphasis on this factor, along with warnings given appellant, without considering that, under the facts recited in the opinion, there were no "intervening circumstances" between the arrest and confession, or the "temporal proximity" of the arrest and confession was only three and a half hours.

I am also unable to agree with the majority's disposition of appellant's third ground of error which alleges error in the trial

---

1. "The court erred in admitting the confession before the jury because it was the product of an illegal arrest and detention."

2. It should be noted, however, that in the Lubbock County case of *Green,* supra, the record was utterly devoid of probable cause to arrest, and the manifestly insufficient affidavit presented to the magistrate had been drafted by an attorney, yet was identical to a Lubbock County affidavit condemned by the Supreme Court of the United States in *Barnes v. Texas,*

380 U.S. 253, 85 S.Ct. 942, 13 L.Ed.2d 818 (1965), some ten years before. Furthermore, in *Green,* supra, the arrest, both in design and execution, was patently investigatory and, indeed, the procurement of a warrant in that case appeared to have been merely a matter of form which all involved knew was of no substance. In fact, in order to conclude the officers had probable cause to arrest Green, the dissent was constrained to look outside the record developed in that case; moreover, the dissent never disclosed what the alleged probable cause was.

court's failure to submit an instruction on the specific intent to kill. According to the majority, an instruction "on the law concerning accident" was adequate because such a charge "is inclusive of the question of intent."

Only a few months ago we unanimously determined,

"[t]here is no law and defense of accident in the present penal code.... The function of the former defense of accident is performed now by the requirement of V.T.C.A. Penal Code, Section 6.01(a), that, 'A person commits an offense only if he *voluntarily engages in conduct.*' * * * In the former law of accident, the term 'intentional' meant something like 'voluntary.' Therefore, the correct meaning of the former term 'accident' was that the actor *did not voluntarily engage in* conduct." [Emphasis supplied] *Williams v. State,* 630 S.W.2d 640, 644 (Tex.Cr.App. 1982).

Appellant's contention cannot be construed to involve a denial he engaged in voluntary conduct. Instead, the genesis of this contention and the cases cited is the "presumption" of the intent to kill which purportedly arises from the use of a deadly weapon *per se.*

In view of *Flanagan v. State* (Tex.Cr. App., No. 60,580, delivered December 22, 1982), handed down today, *Foster v.*

*State,* 639 S.W.2d 691 (Tex.Cr.App.1982), and *Williams,* supra, it is clear that we should acknowledge that former Articles 45 and 1139 [3] were repealed on January 1, 1974 when the present Penal Code became effective, and clarify the correct law in this area.[4] Such clarification could and should be made in this case; I believe it would amply justify overruling appellant's third ground of error.

ONION, P.J., and ROBERTS and TEAGUE, JJ., join.

3. Article 45 provided:
"The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."
Article 1139 provided:
"When an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the accident or innocent intention. The injury intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind."

4. According R. Ray, Texas Law of Evidence, § 51 (3d ed. 1980):
"Courts and textbook writers often divide presumptions into two classes: Presumptions of law and presumptions of fact. Such a classification is, at best, confusing. The difference between the two is the difference between things which are true presumptions and things which are *not presumptions at all.* A true presumption is a rule of law laid down

by the courts which attaches to facts certain procedural consequences. On the other hand, a presumption of fact is nothing more than an inference which may be drawn by the jury from the circumstances without the aid of any rule of law." [Emphasis supplied]
Thus the correct rules of law are two:
(1) a factfinder ordinarily may infer the fact of intent to kill from the use of a weapon which is *per se* deadly;
(2) as a standard of review, an appellate court will accept that inferential factfinding except when, because of special circumstances of fact, no rational factfinder could have believed beyond a reasonable doubt that intent to kill had been proved. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981).
Neither of these rules of law are "presumptions." E.g., *Flanagan,* supra; but see *Foster,* supra.